No. 24-5207

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**LYNN KIZER,**
**Plaintiff/Appellant,**

v.

## ST. JUDE CHILDREN'S RESEARCH HOSPITAL,
**Defendant/Appellee.**

On Appeal from the United States District Court
for the Western District of Tennessee, at Memphis
No. 2:22-cv-02620

## BRIEF OF APPELLANT LYNN KIZER

Kristin Fecteau Mosher, Esq.
The Law Office of Kristin Fecteau, PLLC
5543 Edmonson Pike, #229
Nashville TN 37211
Tel: (615) 496-5747
kristin@fecteaulaw.com


Ronald Hackenberg
Pacific Justice Institute
9851 Horn Road, Suite 115
Sacramento, CA 95827-6600
Tel: (916) 857-6900
Rhackenberg@PJI.org


*Attorneys for Appellant Lynn Kizer*

## DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, counsel for Appellant states that she represents Lynn Kizer, an Individual, who does not have a parent entity and does not issue stock. Counsel further certifies that only the undersigned counsel has appeared for Plaintiff/Appellant in this case.

This the 20th day of May, 2024.

Respectfully submitted,

 /s/ K ristin  Mosher
Kristin Fecteau Mosher, Esq.
The Law Office of Kristin Fecteau, PLLC
5543 Edmonson Pike, #229
Nashville TN 37211
Tel: (615) 496-5747
Fax: (615) 691-7194
kristin@fecteaulaw.com

/s/ Ronald Hackenberg
Pacific Justice Institute
9851 Horn Road
Suite 115
Sacramento, CA 95827-6600
Tel: (916) 857-6900
Fax: (916) 857-6902
Rhackenberg@PJI.org

*Counsel for Appellant*

# TABLE OF CONTENTS

DISCLOSURE STATEMENT……………………………………....…...……..i

TABLE OF CONTENTS……………..……………………….………. ii

TABLE OF AUTHORITIES……………………………………………….v

STATEMENT REGARDING ORAL ARGUMENT……………………….vii

JURISDICTIONAL STATEMENT…………………………………………..1

STATEMENT OF THE ISSUES…………………………………………..2

STATEMENT OF THE CASE………………………………………………3

STATEMENT OF FACTS……………………………………………………5

SUMMARY OF ARGUMENT…………………………………….…….11

ARGUMENT………………………………………………………………16

I.    WHEN THE DISTRICT COURT DETERMINED THERE WAS AN
      UNDUE BURDEN THAT PREVENTED THE EMPLOYER FROM
      REASONABLY ACCOMMODATING MS. KIZER'S REQUEST
      FOR EXEMPTION FROM ITS MANDATORY COVID-19
      VACCINE POLICY, IT ERRED BY SUBSTITUTING ITS
      OPINION IN PLACE OF THE FINDER OF FACT.……………...……18

      A.    The Trial Court Erroneously Mades A Finding Of Fact
            That Looking For Another Job For Ms. Kizer Is An Undue
            Burden When The Evidence Is Disputed. …………………...……18

      B.    The Cost Associated with the COMPASS System Is A
            Red Herring. ………………………………………………… 23

**C.    A Jury Should Decide Whether Other Accommodations Were Available That Were Not An Undue Hardship.** …………..24

    1.  Someone vaccinated could go to campus in Ms. Kizer's place. ………………………………………………24

    2.  Merely Looking At Ms. Kizer's Job And Saying She Cannot Perform Some Duties A Year From Now Was Not Sufficient To Meet Employer's Obligation Under Title VII**. ……………………………………………...25

**D.    Whether St. Jude Engaged in A Good-Faith Interactive Process with Ms. Kizer Is A Factual Dispute.** ……………..……..26

    1.  St. Jude never considered modifying Ms. Kizer's job as they did for others, or transferring her to another position**. ……………………………………………...27

    2.  Because Ms. Kizer was fired without communication, consideration, or method of appeal, a jury should decide whether St. Jude made a good faith effort to accommodate Ms. Kizer's sincerely held religious beliefs**. …………………30

**II.    THE PARTIES SUBMITTED DIRECTLY CONTRADICTORY DECLARATIONS REGARDING ST. JUDE'S ABILITY TO REASONABLY ACCOMMODATE MS. KIZER'S EXEMPTION REQUEST, AND THE DISTRICT COURT ERRED BY ASSIGNING CREDIBILITY TO ST. JUDE'S WITNESS OVER MS. KIZER'S.** ………………………………………………..34

**A.    The Trial Court Erroneously Found St. Jude's Declarant To Be Credible, And Ms. Kizer's Declarant Not To Be Credible.** …..36

**B.    Unresolved Issues Regarding the Appearances of St. Jude Engaging in Unethical Conduct to Conceal Ms. Carter's Identity and Whereabouts during the Discovery Process At The Expense Of Ms. Kizer Should Have Been Addressed Prior to Summary Judgment Being Granted.** …………………………………………..……………..36

**III.    THE DISTRICT COURT IMPROPERLY CONSIDERED EXPERT TESTIMONY AND OUTSIDE FACTS ABOUT THE COVID-19 PANDEMIC AND VACCINE WHEN IT CONSIDERED THE REASONABLENESS OF ST. JUDE'S ACTIONS.** ……………………………………………38

**CONCLUSION**………………………………….…………………..……………...42

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION……………………………………………………...………..43

CERTIFICATE OF SERVICE…………………………………….………44

ADDENDUM……………………………………………………………45

TABLE OF AUTHORITIES

**Cases**

*Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)……..……………..………35, 36

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ……..……..……..14, 15, 35

*Biegas v. Quickway Carriers, Inc.* , 573 F.3d 365 (6th Cir. 2009)………………15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)…………………………………..15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)……......40, 41

*Draper v. United States Pipe & Foundry Co*., 527 F.2d 515 (6th Cir.1975)……..21

*EEOC v. Tex. Hydraulics, Inc.,* 583 F. Supp. 2d 904 (E.D. Tenn. 2008)………...22

*Groff v. Dejoy*, 600 U.S. 447 (2023)……………….…………..22, 23, 24, 25, 27, 34

*Henderson v. Ardco, Inc*., 247 F.3d 645 (6th Cir.2001)…………………………..15

*Love v. St. Jude Children's Rsch. Hosp*.,
No. 20-cv-2813-SHL-tmp, 2022 WL 985952………………………..……………19

*McLaughlin v. Liu*, 849 F.2d 1205 (9th Cir. 1988)…………………………35, 36

*Old Chief v. United States*, 519 U.S. 172 (1997)…………………………………16

*Redmond v. GAF Corp*., 574 F.2d 897 (7th Cir.1978)……………………………21

*Scott v. Harris*, 550 U.S. 372 (2007)…………………………………..……..15

*Smith v. Pyro Mining Co*., 827 F2d. 1081, 1085 (6th Cir. 1987)…..…..18, 21, 22, 28

*Shumate v. City of Adrian*, 44 F.4th 427 (6th Cir. 2022)……………….………15

*Thacker v. Ethicon, Inc.*, 47 F.4th 451, 459 (6th Cir. 2022)…………………………16

*T.W. Elect. Service, Inc. v. Pacific Elec. Contractors Ass'n*,
809 F.2d 626 (9th Cir. 1987)…………………………………………..……………15

*United States v. Abel*, 469 U.S. 45 (1984)…………………………………………..16

*United States v. Albuquerque*, 545 F.2d 110 (10th Cir.1976)……………..………22

*World Airlines v. Hardison,* 432 U.S. 63 (1977)………………..…………………22

## **Statutes**

28 U.S.C. §1331 ……………………………………..…………………………1, 3
28 U.S.C. 1391(b)……………………………………………………..…………3
28 U.S.C. §1746………………………………………………………………19, 36
42 U.S.C. §2000e……………………………………………………...……...3
Title VII of the Civil Rights Act of 1964……………………………...……1, 11

## **Rules**

Federal Rule of Appellate Procedure 4(a)(1)(A)……………….…..……………1

Federal Rule of Civil Procedure 26(a)(2)(A)…………………………………2, 40

Federal Rule of Civil Procedure 26(a)(2)(B)………………………………… 40

Federal Rule of Civil Procedure 56………………………..………………...1, 15

Federal Rule of  Evidence 701………………………………………………40

Federal Rule of  Evidence 702………………………………………………41

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 6 Cir. R. 34(a), Lynn Kizer requests oral argument in this matter because it presents issues of national importance implicating fundamental Civil Rights for those who sought religious accommodations from mandatory vaccine mandates in their workplace, in the wake of the worldwide COVID-19 pandemic. This case could have implications nationwide on one of America's most cherished rights, to act in accordance with religious dictates and conscience, and not to be discriminated against for exercising those rights.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that a Federal question is raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. This Court has jurisdiction over this appeal from an order entering judgment pursuant to Fed. R. Civ. P. 56 on February 12, 2024. The Notice of Appeal (R. 54) was timely filed on March 7, 2024, pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF ISSUES

#1 - When the district court determined there was an undue burden that prevented Ms. Kizer's employer from reasonably accommodating her request for exemption from its mandatory COVID-19 vaccine policy, did it err by substituting its opinion in place of the finder of fact who is in the best position to determine reasonableness by weighing the unique facts and circumstances between Ms. Kizer and St. Jude?

#2 - When the parties submitted directly contradictory evidence by two witnesses, in the form of brief written declarations, regarding St. Jude's ability to reasonably accommodate Ms. Kizer's exemption request, did the district court err by assigning credibility to St. Jude's witness and accepting her testimony, and disregarding Ms. Kizer's witness, when the credibility of witnesses should be determined by the trier of fact after testimony and cross-examination?

#3 - When St. Jude never disclosed any experts and Ms. Kizer objected under FRCP 26(a)(2)(A) to the expert testimony it submitted in support of its Motion for Summary Judgment, did the district court err in making its decision about the reasonableness of the employer's actions by accepting testimony based on "St. Jude experts," as well as its own outside research regarding Covid-19 and vaccines?

## STATEMENT OF THE CASE

On September 16, 2022, Lynn Kizer filed a Verified Complaint in the District court for the Western District of Tennessee, at Memphis within 90 days of receiving her Right to Sue letter from the EEOC (Verified Complaint, R. 1, ¶43 PageID #9). Jurisdiction was invoked pursuant to 28 U.S.C. §1331 (Id.). Venue was proper because the events alleged substantially occurred in the Western District of Tennessee and Appellee's principal place of business is 262 Danny Thomas Pl, Memphis, TN 38105, Shelby County, which is located in the Western District of Tennessee, pursuant to 28 U.S.C. §§1391(b) and 42 U.S.C. §2000e-5(f)(3) (Id.). Appellant did exhaust her administrative remedies through the EEOC process and complied with all requirements pursuant to 42 U.S.C. §2000e-5(f)(3) before filing this lawsuit (Id.).

Ms. Kizer sought compensation for damages after she was terminated from her employer, St. Jude Children's Research Hospital, Inc., asserting that she suffered an adverse employment action when she was terminated from her job, and that discrimination was the motivating factor because of her religion, (Id., R. 1, PageID #1-15). St. Jude filed an Answer on November 9, 2022 (Answer, R. 10, Page ID# 63-71).

St. Jude filed a Motion for Summary Judgment on July 31, 2023, claiming that the multiple methods of accommodation proposed by Ms. Kizer would each constitute an undue hardship to St Jude.  (R. 31-32, Motion and Memorandum in Support of Defendant's Motion for SJ, Page ID# 118-139).

3

On February 12, 2024, the district court granted Defendant's Motion for Summary Judgment and dismissed the case.

Appellant timely filed this appeal on March 7, 2024.

## STATEMENT OF FACTS

Lynn Kizer is a Registered Nurse and Certified Clinical Research Professional (Verified Complaint, R. 1, ¶12 at PageID# 3). As a research nurse Ms. Kizer was not authorized to provide clinical care in that role and was not required to participate in hospital-specific clinical nursing care certifications, but instead worked with research data, regulatory details, and coordination of research studies (Id., R. 1, ¶4 at PageID 2). At all times relevant to this litigation, Ms. Kizer did not have contact with patients, nor did she require access to clinical areas to perform her duties (Id. at ¶13, PageID# 4). She worked in a building that is separate from the patient areas on campus (Id.).

In March 2021, while employed by St. Jude, she was transferred to the new position of Electronic Health Record ("EHR") Applications Analyst on the Epic Team. (Pl Resp. to Def. Undisputed Facts, R. 32-4 at PageID# 508). The Epic Team's purpose was to transition St. Jude's EHR to a new software system developed by Epic Systems. (Id.) Plaintiff was assigned to the Ambulatory and Research Team, a team of employees dedicated to implementing the Epic software system for the medical records maintained by St. Jude's clinical researchers as they developed and carried out research protocols on St. Jude patients (Id. at #6, PageID# 509).

When St. Jude announced its mandatory vaccine policy on July 14, 2021, Ms. Kizer submitted for religious accommodation with the online form and a letter describing her objection. (Plaintiff's Stmt. of Add'l Facts in Dispute, R. 32-3,

5

PageID# 497)  In the letter, Plaintiff asked that St. Jude allow her to work remotely from home rather than being forced to take the vaccine. (Pl. Req. for Religious Accommodation, R. 31-14 at PageID 343–44.) She also specifically requested to meet with her employer to discuss possible accommodations to her sincerely held religious beliefs, per EEOC guidelines (Complaint, R. 1, 22, PageID# 4).

St. Jude formed a Vaccine Accommodations Committee ("VAC") which considered each employee's accommodation request individually, voting unanimously on whether to approve or deny the request. (Pl. Resp. to Def. Stmt. of Material Facts, R. 32- 4, #31 at PageID# 516.)  The VAC and members of Human Resources collected further information as needed for each employee's requested accommodation and recorded it on an internal master Excel spreadsheet. (Id. at #33, PageID# 517)  As it gathered information, the VAC talked with management for an employee's department about their job duties and how they performed those duties. (Id.)  The VAC met and evaluated each employee's department and title, if they interacted with patients, if they had their own enclosed office, where their workspace was, if they needed to access clinical areas ("yellow zones"), if their position allowed them to maintain six feet of distance with others, and how often they were on campus (Bottenfield Decl., R. 31-5, #34, PageID# 181).  Without identifying the applicant by name, the VAC then used that information to decide "blindly" whether St. Jude could accommodate an employee without undue hardship.  (Id.)

6

However, there was no meeting granted to discuss accommodation and she was sent a form letter denying her request, stating that she could not be accommodated (Def. Resp. to Pl's Add'l Facts in Dispute, R. 33-1, #33, PageID# 533). Upon receipt of this notification of her denial, Ms. Kizer hired a lawyer, who wrote a letter to Defendant, requesting that the defendant to engage in conversation with Ms. Kizer about the possibility of accommodation (R. 1, Complaint at ¶25, at Ex. 5, PageID# 6). Because the response from St. Jude was so divorced from her actual duties, and cited incorrect hiring and certification dates, Ms. Kizer assumed they were discussing the wrong employee (Id. at ¶26). St. Jude again refused to meet hold any interactive process with her (Id.).

Due to the incorrect job duties and incorrect information about Ms. Kizer cited by the denial letter, Ms. Kizer understandingly assumed St. Jude had the information for the wrong employee, and therefore sent a second letter, requesting for the third time an interactive process, hoping to clarify the erroneous information. (Id. at Exhibit 7, PageID# 44-47). However, St. Jude responded by denying having the wrong employee, and again, for the third time, refused to engage in the interactive process (Id. at ¶28, at Ex. 8, PageID# 49-50). St. Jude then doubled down on the incorrect job duties and asserted that Ms. Kizer's job description involves contact with patients and a physical presence in clinical areas (Id.)

Through discovery, Ms. Kizer learned that the duties cited by St. Jude that prohibited her from being accommodated were only projected to come into play a year after she was fired, in September/October 2022. This is why the duties being cited to in its several denial letters about whether her "essential job functions" could not be performed "entirely off campus" were so unfamiliar to Ms. Kizer. (Def. Stmt. of Undisp, Facts, R. 31-4, #36-40, PageID# 169-170). In fact, Ms. Kizer had previously actually received emails from St. Jude telling her that her position would likely be a work-from-home position in the future (Verified Complaint at Exhibit 9, R. 1, PageID# 52). The discrepancy in information was because St. Jude relied on information from a manager, Colette Hendricks, several steps removed from Ms. Kizer, who was not the person who was the best and most qualified to evaluate Ms. Kizer's job to determine whether she could be accommodated by working 100% remote. St. Jude's policy was for the VAC to contact the employee's immediate supervisor, but this was not done in Ms. Kizer's case. (Def. Stmt. of Undisp. Fact, R. 31-4, #33, PageID# 168-169). The person who was best suited to speak to Ms. Kizer's job duties was her immediate supervisor, Christyna Carter. (Pl. Stmt. of Add'l Facts in Dispute, R. 32-3, #11-13, PageID# 498-499, Ex. B, Speck Depo., R. 32-2, PageID# 494-495).

Ms. Kizer was placed on unpaid leave on September 9, 2021, and terminated on September 21, 2021, due to her refusal to violate her religious beliefs and take the vaccine (Def. Stmt. of Undisp. Facts, R. 31-4, #43, PageID# 171). Had the VAC

interviewed Ms. Kizer's immediate supervisor, they would have been informed that Ms. Kizer could have been "easily accommodated" with slight job modifications, such as was done by the defendant for nine other employees with religious objections. (Pl. Stmt. of Add'l Facts in Dispute, R. 32-3, #16 PageID# 499 and #34-35, PageID# 501; Def. SUMF, R. 31-4, #44, PageID# 171). In fact, accommodations were easily made for some people—employees requesting medical exemptions were treated differently than those requesting religious accommodations. People with medical exemptions were allowed to continue on campus depending upon their position, while people requesting religious accommodations were required to be "banned from campus" (Native format spreadsheet, R. 31-15 *submitted in camera*), including being granted temporary accommodations whereas religious exemptions were not (Bottenfield Depo., R. 32-1, PageID# 474).

In addition, Ms. Carter was trying to find persons to work on St. Jude's current/ legacy electronic records program, a job that could have been done remotely, for which the plaintiff was highly qualified. Carter said that she would have hired Ms. Kizer immediately for that different job if she knew Ms. Kizer was being fired. (Pl. Stmt. of Add'l. Facts in Dispute, R. 32-3, #31-33, PageID# 500-501)

Ms. Carter was employed at St. Jude until September 7, 2021, (Id. at #15, PageID# 499) and was on campus and available to discuss Ms. Kizer's accommodation at all times before the decision was made to fire her, which was sometime before the

August 20, 2021, denial letter. St. Jude maintains that Ms. Carter resigned in early August and was no longer with St. Jude (Bottenfield Decl., R. 31-5, ¶40, PageID# 182-183). While she may have submitted a letter of resignation, she was on campus and available (Pl. Stmt. of Add'l. Facts in Dispute, #15, PageID# 499).

## SUMMARY OF ARGUMENT

The opening line of the district court's order granting summary judgment in this case says "This is a case about what happens when a hospital's mandatory vaccine requirement collides with an employe's refusal to get vaccinated because of her religious beliefs." The very skewed nature of this statement classifying what this case is about is why this case is on appeal right now.

Ms. Kizer respectfully disagrees. This case is not about her refusal. It is rather about St. Jude's refusal to engage in a reasonable interactive process to accommodate Ms. Kizer's civil rights to still do her job but not be forced to violate her religious beliefs. This is no different than any other case where someone asks to be accommodated for religious beliefs for things like not being scheduled to work on their Sabbath, or a Catholic pharmacist asking to be exempt from dispensing abortifacients. This is not Ms. Kizer's actions, it about St. Jude's actions. This case is on appeal because the district court substituted its judgment about what Ms. Kizer should have done, for what a jury should determine that St. Jude should have done pursuant to Title VII of the Civil Rights Act. Because accommodation cases require a determination of whether an employer's accommodation attempt was reasonable on a "case-by-case basis," considering the "unique circumstances of the individual employer-employee relationship," these types of cases do not lend themselves to summary judgment, because the fact-finding role of the jury should be employed to weigh all the

11

circumstances and facts. Therefore whether Ms. Kizer could have been accommodated and continued working instead of being fired on September 9, 2021, for failing to comply with the mandatory COVID-19 vaccine policy, should be a question that is left to the jury. The district court invaded the province of the jury by weighing credibility and resolving factual disputes presented in the Motion for Summary Judgment, and it was error to dispose of this case upon Summary Judgment.

Ms. Kizer worked as a research analyst at St. Jude, and then became part of a team that was designing and building the database for Epic, an electronic medical record software system being implemented at St. Jude. As such, Ms. Kizer's duties were sitting at a computer, not mingling with co-workers nor any of the patients at the hospital. Ms. Kizer's job could have easily been accommodated because her duties could have been done completely from home, according to Ms. Kizer's former supervisor, Christyna Carter. All she needed was either slight job modification to work from home, or she could have even been placed in another job that was a fully remote IT job. At no time did Ms. Kizer's request for accommodation ever present a danger or threat to any of St. Jude's medical staff, patients, or other personnel. Ms. Kizer never challenged the legitimacy of St. Jude to implement a mandatory COVID-19 vaccine policy. She simply asked to be exempt from violating her sincerely held religious beliefs that prevented her from taking the vaccine, in a way that preserved her job yet kept everyone safe.

In response to the Motion for Summary Judgment, Ms. Kizer submitted evidence in the form of testimony from her supervisor, Ms. Carter, that she could have been easily accommodated to work from home or change to a different position, without any COVID-19 risk at her workplace, and without any significant expense on the part of the employer. That testimony directly contradicts the testimony proffered by St. Jude's witnesses. Yet, the district court chose to discredit Ms. Carter's testimony, and weigh the facts in favor of St. Jude, in violation of its proper role in Summary Judgment. Critical facts are in dispute in this case, some of which will turn on assigning credibility, which can only be done by a jury. The district court erred in assessing the credibility of witnesses, who testified to key issues only in Unsworn Statements, and not where the court could see and hear and evaluate the witnesses' testimony in person, or even in a deposition where their testimony was cross-examined. This case should be remanded to the district court where a jury may properly resolve the factual disputes surrounding these issues.

It does not ultimately matter what one thinks of the efficacy of vaccines or the extraordinary measures taken to combat the pandemic. However, the district court erred by not only allowing expert testimony on the subject matter regarding the risks and complications regarding COVID and the vaccine, data regarding St. Jude's patients' vulnerability to the virus, and St. Jude's business judgment in implementing a mandatory vaccine policy, but it also did its own outside research on those topics, all

of which obviously improperly influenced its decision in this case and showed a bias about alleged facts that are actually irrelevant to the issue at hand, which is whether Ms. Kizer could have been accommodated so that she could maintain employment with St. Jude, by working from home, causing harm to no one.

Ultimately, the case turns on principles that both precede and transcend the pandemic—the basic right of an employee not to be fired for their sincerely held religious beliefs if the employer can accommodate those beliefs without incurring undue hardship.   As such, Ms. Kizer asks this Honorable Court to vacate the judgment of the lower court and remand this case for trial on the merits.

## STANDARD OF REVIEW

The Court reviews a district court's decision on a motion for summary judgment de novo, using the same legal standards employed by the district court. See *Henderson v. Ardco, Inc*., 247 F.3d 645, 649 (6th Cir.2001). Summary judgment is appropriate only if the answers to interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986) (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Shumate v. City of Adrian*, 44 F.4th 427, 438 (6th Cir. 2022) (internal quotation marks omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 378, (2007)).

"If the evidence would allow a reasonable jury to find in favor of a non-moving party, summary judgment may not be granted." *Id*. (citing *Anderson*, 477 U.S. at 248). "Moreover, 'in reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited.'" *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 459 (6th Cir. 2022) (quoting *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)).

Regarding the district court's allowance of expert testimony in this case, abuse of discretion is the proper standard of review of a district court's evidentiary rulings. *Old Chief* v. *United States,* 519 U.S.172,174, n.1 (1997); *United States* v. *Abel,* 469 U. S. 45, 54 (1984).

## LAW AND ARGUMENT

This is not a case that asks the Appellate Court to decide on the efficacy of the COVID vaccines, or the feasibility of mandatory COVID vaccines in a healthcare setting. This appeal simply asks the Appellate Court to place the weighing of evidence back where it belongs--- in the hands of the jury, to determine that Ms. Kizer could have been accommodated without undue hardship to her employer, St. Jude Children's Research Hospital. Because this is a case about what is "reasonable" in the context of a religious discrimination case under Title VII, this is a very fact-dependent finding, and this case should not have been dismissed upon Summary Judgment.

The district court found that Ms. Kizer did establish a *prima facie* case of

religious discrimination (Order Granting Motion for Summary Judgment, R. 42, PageID# 691-92). First, St. Jude assumed that all employees who requested religious accommodations held sincere religious beliefs.5 (Id., PageID# 692.) Second, Plaintiff informed St. Jude of her beliefs by submitting an accommodation request and stating the reason for her objection to the vaccine. (Id.) Third, St. Jude discharged Plaintiff on September 24, 2021, when she did not comply with its mandatory vaccine policy. (Id.) Therefore, all elements were met.

The court then recognized that burden shifted to St. Jude to show it could not reasonably accommodate Ms. Kizer without undue hardship (Id.).

Appellee's Motion for Summary Judgment was premised on the theory that when Ms. Kizer requested an accommodation from St. Jude's mandatory COVID-19 vaccine policy due to her sincerely held religious beliefs, there were no material facts in dispute that it could not reasonably accommodate her without suffering from undue hardship (R. 31-1, Memo in Support of MSJ, PageID# 121). Ms. Kizer responded by presenting citations to the record, and affidavits in opposition showing that there were material facts in dispute and Summary Judgment could not be granted (Pl. Resp. to Motion for Summary Judgment, R. 32, PageID# 450-469). However, the district court erroneously found that St. Jude met its burden, because there are numerous facts in dispute about the reasonableness of St. Jude's actions, whether it at least considered possible options that would have accommodated Ms. Kizer, and that these options were rejected

because they would have caused an undue hardship. *Smith v. Pyro Mining Co.*, 827

F2d. 1081, 1085 (6th Cir. 1987).

A trial on the merits is necessary to weigh the evidence.

I.    **WHEN THE DISTRICT COURT DETERMINED THERE WAS AN UNDUE BURDEN THAT PREVENTED THE EMPLOYER FROM REASONABLY ACCOMMODATING MS. KIZER'S REQUEST FOR EXEMPTION FROM ITS MANDATORY COVID-19 VACCINE POLICY, IT ERRED BY SUBSTITUTING ITS OPINION IN PLACE OF THE FINDER OF FACT.**

A.    **The Trial Court Erroneously Mades A Finding Of Fact That Looking For Another Job For Ms. Kizer Is An Undue Burden When The Evidence Is Disputed.**

The trial court found that:

Searching for an open position that an employee is qualified for, transferring her, and then modifying that position to accommodate an employee's religious beliefs may not always amount to an undue hardship. But under the circumstances here, the Court finds that it would have. . . . . Over 60 employees tried to avoid getting vaccinated for religious reasons. St. Jude modified 9 positions to allow some employees to work remotely. But that left 53 others, including Plaintiff, seeking accommodation. And so the Court considers the aggregate effect of attempting to transfer not just Plaintiff, but the many other employees seeking accommodation"

(Order Granting Summary Judgment, R. 42, PageID# 716-17).

The court does not cite to anything in the record for making this finding of fact.

It just makes the leap itself without any testimony from St. Jude about it. In fact, the

court specifically disregarded a material dispute of fact on this point that was raised by

Ms. Kizer, who submitted a Declaration from her witness, Ms. Carter, her former

18

supervisor, to the contrary. Ms. Carter said she would have "absolutely recommended Ms. Kizer be accommodated because it "would have been simple to do so" and "easily accommodated by working from home and attending meetings remotely without any effort whatsoever on the part of St. Jude" (Carter Decl., R. 32-3, ¶10, ¶21, PageID# 499). The court committed reversible error in disregarding this testimony and finding it noncredible:

> Plaintiff fails to show what "Legacy system" Ms. Carter is referring to, what authority Ms. Carter had to "place" Plaintiff in another job outside of Epic, or how Plaintiff was qualified for that position. St. Jude correctly points out that conclusory allegations, speculation, and unsubstantiated assertions such as Ms. Carter's do not supply evidence of a genuine dispute of material fact. Id.; *Love v. St. Jude Children's Rsch. Hosp.*, No. 20-cv-2813-SHL-tmp, 2022 WL 985952, at *6 (W.D. Tenn. Mar. 11, 2022). It is therefore undisputed that St. Jude had no positions that were 100 percent remote, so it would have had to modify a position before transferring Plaintiff.

(Order, R. 42, PageID# 716). However, Ms. Carter's testimony is not like the assertions or proof proffered in the *Love* case. In *Love*, the Plaintiff submitted a response to a Motion for Summary Judgment that had no citations to the record, and unsworn statements that were not admissible (*Love* at *2-4). That is nothing like this case, where Ms. Kizer submitted a proper response to St. Jude's Motion, that cited to the record, including Ms. Carter's Declaration under penalty of perjury pursuant to 28 U.S.C. §1746, based on her personal knowledge, just like St. Jude did for Ms. Hendricks, as well as Ms. Bottenfield. Therefore, to classify Ms. Kizer's evidence as "conclusory allegations, speculation, and unsubstantiated assertions" and then

19

classifying St. Jude's facts as "undisputed" is clearly wrong, and reversible error. However, to break it down, Ms. Carter was Ms. Kizer's supervisor and knew Ms. Kizer's qualifications. The term "legacy system" refers to the current system that St. Jude was on while transitioning to the new Epic system. Ms. Carter referred to it as "our legacy system" meaning St. Jude's (Id. at ¶15). She further states that "Lynn was an analyst, and passed a very difficult Epic certification. A number of employees could not pass it and went back to working at the former legacy program" (Id. at ¶5). What more could Ms. Carter have said to show that the legacy system was the current electronic record system at St. Jude? It is quite disingenuous to play games and for St. Jude to represent to the court that it does not know what is being referred to here, and then the district court to actually believe the feigned ignorance is even harder to accept. Finally, Ms. Carter literally stated in her Declaration that she was "looking for people to work on legacy and could not find any. I had to interview and hire subcontractors because I couldn't find anyone to take the position" (Id.). Ms. Carter was interviewing and hiring on behalf of St. Jude. She clearly had the power to hire Ms. Kizer outside her job working on Epic. Nevertheless, at the very least, the court is required to construe all inferences of fact in favor of Ms. Kizer. That would include assuming that Ms. Carter had the authority to do what she claimed under oath such as knowing Ms. Kizer's qualifications and hiring her for a different position or helping to "easily" accommodate her.

Ms. Carter's testimony is absolutely admissible and creates genuine issues of material fact that are reserved for a jury and therefore summary judgment is inappropriate.

The *Smith* Court stated that "[t]he reasonableness of an employer's attempt at accommodation cannot be determined in a vacuum. Instead, it must be determined on a case-by-case basis; what may be a reasonable accommodation for one employee may not be reasonable for another." *Id*. at 1085.

> The term "reasonable accommodation" is a relative term and cannot be given a hard and fast meaning. Each case involving such a determination necessarily depends upon its own facts and circumstances, and comes down to a determination of "reasonableness" under the unique circumstances of the individual employer-employee relationship. The trier of fact is in the best position to weigh these considerations.

*Id*. (Citing *Redmond v. GAF Corp*., 574 F.2d 897, 902-03 (7th Cir.1978), Accord *United States v. Albuquerque*, 545 F.2d 110, 114 (10th Cir.1976)).

The *Smith* Court reiterated well-established case law in this jurisdiction, and noted that:

> [A]n employer does not sustain his burden of proof merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine. In addition, we are somewhat skeptical of hypothetical hardships that an employer thinks might be caused by an accommodation that never has been put into practice. The employer is on stronger ground when he has attempted various methods of accommodation and can point to hardships that actually resulted.

*Id*. at 1085-86 (citing *Draper v. United States Pipe & Foundry Co*., 527 F.2d 515, 520 (6th Cir.1975)).

21

The district court correctly found that the recent case of *Groff v. Dejoy*, 600 U.S. 447 (2023) was instructive here. *Groff* held that just "showing 'more than a *de minimis* cost,'. . . does not suffice to establish 'undue hardship.'" *Id.* at 468. Instead, *Groff* clarified the standard that employers had followed after the case of *World Airlines v. Hardison, 432 U.S. 63 (1977)* to be not just a "*de minimus* burden" but rather that an "undue hardship" occurs "when a burden is substantial in the overall context of an employer's business." *Id.* This clarification of *Hardison*'s standard tracks the ordinary meaning of "undue hardship" and *Hardison*'s references to "substantial" costs:

> [A] "hardship" is, at a minimum, "something hard to bear." Other definitions go further. But under any definition, a hardship is more severe than a mere burden. So even if Title VII said only that an employer need not be made to suffer a "hardship," an employer could not escape liability simply by showing that an accommodation would impose some sort of additional costs. Those costs would have to rise to the level of hardship, and adding the modifier "undue" means that the requisite burden, privation, or adversity must rise to an "excessive" or "unjustifiable" level . . . . When "undue hardship" is understood in this way, it means something very different from a burden that is merely more than *de minimis*, *i.e.*, something that is "very small or trifling."

*Id.* at 468–69 (internal citations omitted).

Even prior to *Groff*, courts have recognized the need for a trier of fact to determine whether or not attempts at accommodations are reasonable.

> The reasonableness of an employer's attempt at accommodation must be determined on a case-by-case basis and is generally a question of fact for the jury, rather than a question of law for the court. *EEOC v. Tex. Hydraulics, Inc.,* 583 F. Supp. 2d 904, 906 (E.D. Tenn. 2008).

22

In the end, courts must consider all relevant factors from each case, "including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer,'" to determine whether an accommodation would pose an undue hardship. *Id.* at 470–71. For example, in this case, the employer here is a huge hospital with a billion-dollar endowment. It is not a mom-and-pop small business with few employees and small operating budget.

Therefore, these types of cases just do not lend themselves to Summary Judgment unless a Plaintiff absolutely submits no countervailing proof. But in this case, the district court gave pages upon pages of reasoning for why Ms. Kizer should lose the case, and did not allow the jury to resolve the weight of the evidence and disputes of material fact, and assign credibility to the testimony of the various witnesses. Ms. Kizer has submitted testimony and evidence that dispute St. Jude's claims of undue hardship. It was enough to defeat Summary Judgment. A jury, based upon the facts described herein, could reasonably and readily find that St. Jude violated Title VII under *Groff*.

**B.    The Cost Associated with the COMPASS System Is A Red Herring.**

For evidence of undue burden, St. Jude provided a large volume of information on the COMPASS program (a program to keep the unvaccinated away from others on campus), and statements of the dangers of unvaccinated people on campus (Def. Stmt. of Undis. Facts., R. 31-4,  ¶¶13-18). The lower court considered these costs in finding

an undue hardship for St. Jude to accommodate Ms. Kizer (Order Granting Summary Judgment, R. 42, PageID#712). However, all of the accommodations sought by Ms. Kizer could have been done "completely from home, and attending meetings remotely, or transferring to a new job which was remote" (Carter Decl., R. 32-3, ¶9, ¶10, ¶15, PageID# 504-505), making the safety concerns that would require the need for the costs for COMPASS to be in place to accommodate Ms. Kizer absolutely irrelevant. It was error for the court to consider the cost of COMPASS a burden.

### C.    A Jury Should Decide Whether Other Accommodations Were Available That Were Not An Undue Hardship.

#### 1.  Someone vaccinated could go to campus in Ms. Kizer's place.

Even assuming arguendo that the Epic team would have needed to be "at the elbow" at "go live," Ms. Kizer submitted evidence to the trial court that she could have been accommodated, even if she worked from home but then had times she would have to go on campus, because there were plenty of vaccinated people on the team to handle such an assignment (Carter Decl., R. 32-3, ¶12, PageID# 504).  This is similar to religious accommodations where workers do not want to work on Sunday or their Sabbath, and another employee takes their shift.

Again from *Groff*:

Second, as the Solicitor General's authorities underscore, Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations. See *Adeyeye*, 721 F. 3d, at 455; see also Brief for United States 30, 33, 39. This

distinction matters. Faced with an accommodation request like Groff's, it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute an undue hardship. Consideration of other options, such as voluntary shift swapping, would also be necessary.

*Groff v. DeJoy*, 600 U.S. 447; 143 S. Ct. 2279, 2296-2297 (2023).

St. Jude did not provide any proof that it considered sending vaccinated employees to campus had the need arisen for Ms. Kizer to go to campus, in accordance with Groff. There is a dispute of fact, therefore, whether St. Jude has met its burden of reasonably attempting to accommodate Ms. Kizer in this case.

> **2. Merely Looking At Ms. Kizer's Job And Saying She Cannot Perform Some Duties A Year From Now Was Not Sufficient To Meet Employer's Obligation Under Title VII.**

The "go live" was a year away and St. Jude could have granted a temporary accommodation to Ms. Kizer until she would need to have any contact with clinical employees, and during that time frame, St. Jude could have found a way to modify her job, or place her in another position (Carter Decl., R. 32-3, ¶ 14, PageID# 505). The trial court should have assumed this fact as true for purposes of Summary Judgment.

It is a dispute of fact whether St. Jude met its obligations under Title VII to accommodate Ms. Kizer's request for exemption from the vaccine mandate. It is undisputed that Ms. Kizer never asked St. Jude to create her a new position, but only to modify her current position, or allow her to take another position she was qualified for. At the time that the Vaccine Committee decided not to accommodate Ms. Kizer

due to Ms. Hendrick's opinion that she would be "at the elbow" of clinical people, Ms. Carter had a different opinion about that, but she was never interviewed (Carter Decl., R. 32-3, ¶13, ¶17, PageID# 505-06). Neither Ms. Carter nor Ms. Kizer ever did any "at the elbow" shadowing while they trained to learn and build the new Epic system, and Ms. Carter did not expect to in the future when the system went live at the hospital that Ms. Kizer would then, either (Id. at 13-14, PageID# 505-06).

In the many months between termination and implementation of EPIC, St. Jude could have allowed Ms. Kizer to search for a position that could be accommodated. It is undisputed that even under St. Jude's factual scenario, Ms. Kizer would not have had to be "at the elbow" for "go live" for a year (Carter Decl., R. 32-3, ¶13, PageID# 504). The pandemic could have even ended beforehand. There was no need to rush her out the door. Indeed, in hindsight, we now know that the pandemic has ended and it is now illegal to require vaccinations as a condition of employment in Tennessee. (Tenn. Code Ann. §  14-6-105).

Again, even assuming arguendo that the only way to accommodate Ms. Kizer would be to put her in a 100% remote job, Ms. Bottenfield's claim that there was no such job as a 100% remote job was untrue or at least a disputed fact (Id., ¶ 16, PageID# 505). Ms. Kizer submitted countervailing evidence in the form of a declaration from her supervisor, Ms. Carter, who stated that she needed people to work on the Legacy system, a job which was 100% remote and for which she could not find qualified

employees to do (Id. at ¶15, PageID# 505). She ended up having to hire outside subcontractors to do the work (Id.). She would have hired Ms. Kizer to help with the Legacy system, which would have been a reasonable accommodation to Ms. Kizer and been no burden at all to St. Jude (Id.). This evidence submitted to the district court should have been taken as true, with all inferences drawn in the light most favorable to Ms. Kizer, and Summary Judgment should have been denied.

The district court looked at the outcome of what happened a year later, that Ms. Kizer's replacement did indeed end up being "at the elbow," and thus found Ms. Hendrick's testimony credible over Ms. Carter's. However, it was erroneous to do so. The weight of Ms. Hendrick's testimony may end up being more than Ms. Carter's due to this ultimate outcome, but upon Summary Judgment, it is not the place of the trial court to make this determination. The role of the trial court should be to construe all reasonable inferences in the light most favorable to Ms. Kizer, and deny Summary Judgment.

Since undue hardship means costs that are "excessive" or "unjustifiable," according to *Groff*, Ms. Kizer has submitted proof that there are no "substantial expenditures" or "substantial additional costs" for the several accommodations that were available, such as allowing Ms. Kizer to work from home 100% and attending meetings via Zoom, or sending another vaccinated employee to do "at the elbow" work, if necessary, or transferring her to work on the legacy system, which was 100%

27

remote (Carter Decl.,  R. 32-3, ¶16, PageID# 504-505).  There are facts in dispute about the undue hardship to St. Jude and the case should be remanded for trial.

### D.    Whether St. Jude Engaged in A Good-Faith Interactive Process with Ms. Kizer Is A Factual Dispute.

The *Smith* Court has pointed out that an employee must actually cooperate with an employer's attempt at accommodation. That cannot happen in the absence of any EEOC process. *Smith* cited to precedent that "bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Smith* v. *Pyro Mining* at 1085. In this case, there was no "bilateral cooperation" possible because St. Jude did not even attempt an accommodation.  Here, Ms. Kizer submitted her request for religious accommodation from the vaccine mandate, and her request actually contained suggestions of how she could be accommodated (Def. Resp. to Pl. Stmt. of Add'l Facts in Dispute, R. 33-1, #1, PageID# 497). St. Jude refused to discuss the request with her at all (Id., #9 PageID# 535). In fact, St. Jude did not even consult with her at all and has stated that there was no need to (Id., R. 33-1, #2-4, PageID# 532-535). HR Director Dana Bottenfield stated that it was not St. Jude's responsibility under the law to even attempt to accommodate with even one proposal (Bottenfield Depo., R. 33-2, PageID# 550). The only accommodation it ever considered for anyone asking for a religious accommodation was that all the job duties of the person had to be able to be performed off campus (Def. Resp. to Pl. Additional Disputed Facts #5, R. 33-1, PageID# 534).

St. Jude never considered modifying Ms. Kizer's job so that she could work 100% remotely from home.

### 1. St. Jude never considered modifying Ms. Kizer's job as they did for others, or transferring her to another position.

In regard to transfer, Bottenfield claims it was 1) not required under Title VII to either place Ms. Kizer in a different position because it was "more than a *de minimus* burden" and 2) if they did it for her, they "would have had to do that for every person who requested a religious accommodation and might have otherwise been denied" (Bottenfield Depo., R. 32-1, PageID# 483). Yet, St. Jude did end up granting nine employees an accommodation for religious reasons all by "banning them from campus" and allowing them to work 100% remotely (Bottenfield Decl., R. 31-5, #44-45, PageID# 183). Furthermore, accommodations were easily made for some people—employees requesting medical exemptions were treated differently than those requesting religious accommodations. People with medical exemptions were allowed to continue working on campus depending upon their position, while people requesting religious accommodations were required to be "banned from campus" (Def. Spreadsheet with notations, Ex. 10 to Bottenfield Decl., R. 31-15 submitted *in camera*), including being granted temporary accommodations whereas religious exemptions were not (Bottenfield depo., R. 32-1, Page ID# 474, and PageID# 482-483). This disparate treatment raises a factual dispute about whether St. Jude attempted to accommodate Ms. Kizer.

29

**2. Because Ms. Kizer was fired without communication, consideration, or method of appeal, a jury should decide whether St. Jude made a good faith effort to accommodate Ms. Kizer's sincerely held religious beliefs.**

Furthermore, even more evidence points to a dispute of fact regarding whether St. Jude acted reasonably and actually attempted to accommodate Ms. Kizer or for the most part, the religious objectors: St. Jude came up with only one way that an exemption would be granted, and there was no other effort to search for or try to find any other form of accommodation. Ms. Bottenfield testified:

Q.   Why would anybody object to trying to make somebody who could work off campus be accommodated by working off campus?

A.   We weren't asking can we accommodate.  We weren't -- that's not how we phrased our questions.  We were trying to understand the nature of the work and what could or could not be done on campus or off campus and why someone felt that.

(Bottenfield depo., R. 33-2, PageID# 472).

However, a jury could easily find that this scheme of only allowing people who could fully work off campus to be accommodated was really a smoke screen, and a set up for actually not accommodating religious exemption requests. Ms. Bottenfield admitted to the following:

A.      To be considered remote only meant that you were 80 percent of your time off campus.  We have -- we have meetings, we have requirements that people come to campus.

Q.   Why couldn't they do it by Webex or FaceTime or any other electronic meeting software?

A.   It's not always possible.

Q.   So are you saying there's no such thing as a hundred percent remote job for St. Jude?

A.   We require employees to come to campus for meetings for collaborative efforts.

Q.   There's no such thing as a hundred percent remote job at St. Jude?

A.   Not to my knowledge.  It's 80 percent or more and to come to campus when required, whenever that might be.

(Depo. of Bottenfield, R. 32-1, PageID# 476-77).

Despite this testimony and reasoning, St. Jude did grant religious exemptions to nine employees, and took away their badges and "banned" them from campus, yet decided it was more than a "*de minimus*" burden to do this for Ms. Kizer (Id. at 481-483).

The facts show that St. Jude never proposed or considered transferring Ms. Kizer to a different job that could be performed fully off campus. When asked whether Ms. Kizer could have applied for an open position that needed to be filled, Ms. Bottenfield said if that were the case, "she was welcome to apply for it, and had she been the best candidate for it, I'm sure that the hiring manager would have selected her" (Id. at 72, lines 2-7, PageID# 406).

However, this was a very disingenuous response. St. Jude never told Ms. Kizer or anyone else who sought a religious accommodation from the mandatory vaccine that working fully remotely was even an option to try to maintain employment at St.

Jude, nor were they ever informed that they had to be "banned from campus" to be granted a religious exemption (Speck Depo., R. 32-2, PageID# 495-496). When asked how Ms. Kizer would have known that seeking a job that could be performed remotely was an option, Ms. Bottenfield flippantly stated she "received a letter that said she was not accommodated" and "she can apply for a position every single day. All our employees are welcome to apply for open jobs" (Bottenfield Depo., R. 32-1, PageID# 483). However, Defendant never told Ms. Kizer that if she could find an open job that was fully remote, she could be accommodated, so of course, Ms. Kizer never even tried to apply for an open job (Kizer Depo., R. 31-17, PageID# 360). This evidence also contradicts St. Jude's evidence, as well as the finding of the district court, that St. Jude acted reasonably. A jury should make this determination.

Finally, Ms. Kizer presented proof in response to the Motion for Summary Judgment that St. Jude never even spoke with Ms. Kizer's direct supervisor to find out what her job duties were (Def. Resp. to Pl Stmt. of Undisp. Facts #10, #14, R. 33-1, PageID# 498-499). This was an egregious breach of a good faith process to discover whether Ms. Kizer's job could have been modified in a way that placed very little or no burden on her employer. First of all, St. Jude claims that Ms. Kizer's direct supervisor, Christyna Carter, had "resigned" from St. Jude in early 2021 (Def. Stmt. of Undisp. Facts, #9, R. 31-4, PageID# 498). This is a disingenuous statement, because even if Ms. Carter had submitted her resignation, she was still working for St. Jude

until September 7, 2021, and she was available to talk to the Vaccine Committee about Ms. Kizer's request for accommodation (Pl. Stmt. of Add'l Disputed Facts, #15, R. 32-3, PageID# 499). If Ms. Carter would have been consulted, she could have easily helped St. Jude modify Ms. Kizer's job to accommodate her (Id. at #16, #21, #28, #34 PageID# 499-501). This fact directly contradicts St. Jude's claims, and the district court's findings, that St. Jude was unable to accommodate Ms. Kizer. It puts the fact in dispute.

Failing to speak with Ms. Carter was paramount. Ms. Carter was in charge of the ambulatory, beacon and research teams (Lynn Kizer's team) and therefore knew what all of them did and had total understanding of the way Epic was to be implemented. (Id. at #3, R. 32-3, PageID# 497). Therefore, Ms. Carter was the most knowledgeable person to speak with about Ms. Kizer's job duties and responsibilities because she would have the best knowledge of her job functions (Carter Decl., R. 32-3, PageID# 503). Ms. Kathleen Speck, Director of Employee Relations at St. Jude, admitted that an employee's direct supervisor would have the best knowledge of her job (Speck depo., R. 32-2, PageID#494-495).

Ms. Carter's Declaration directly contradicts Ms. Bottenfield and Ms. Hendricks, creating a genuine issue of material fact about Ms. Kizer's job duties, and ability to be accommodated. Ms. Carter stated that Ms. Kizer never would have had to work anywhere near patients and it was never anticipated that Ms. Kizer would have

worked "at the elbow" at "go live" because it did not make sense for her to. (Carter Decl., R. 32-3, PageID# 504).

As such, the district court erred in disregarding Ms. Carter's testimony, and choosing St. Jude's witnesses credibility over hers. The court may not make credibility judgments and weighing of the evidence is prohibited. This Court should reverse the Summary Judgment and remand the case to trial because there are numerous questions of facts regarding whether St. Jude engaged in the required interactive process.

Accommodation cases just do not lend themselves to Summary Judgment unless a Plaintiff absolutely has no countervailing proof. But in this case, there are disputes of material fact, where an analysis should be done by a trier of fact who can assign credibility to the testimony of the various witnesses. Ms. Kizer has submitted testimony and evidence that dispute St. Jude's claims of undue hardship. A jury, based upon the facts described herein, could reasonably and readily find that St. Jude violated Title VII under *Groff.* Summary judgment should be reversed and the case sent to trial.

## II. THE PARTIES SUBMITTED DIRECTLY CONTRADICTORY DECLARATIONS REGARDING ST. JUDE'S ABILITY TO REASONABLY ACCOMMODATE MS. KIZER'S EXEMPTION REQUEST, AND THE DISTRICT COURT ERRED BY ASSIGNING CREDIBILITY TO ST. JUDE'S WITNESS OVER MS. KIZER'S.

Summary judgment is inappropriate in this case because there were conflicting declarations submitted by the parties about St. Jude's ability to accommodate Ms. Kizer, making St. Jude unable to meet its burden showing it was unable to reasonably

accommodate Ms. Kizer without undue hardship on Summary Judgment. This Court

has *de novo* review over this issue.

This Court held in *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994):

> [T]he trial court may only inquire into the plausibility of circumstantial
> evidence, and that when the non-moving party presents direct evidence
> refuting the moving party's motion for summary judgment, the court
> must accept that evidence as true. *McLaughlin v. Liu,* 849 F.2d 1205,
> 1207 (9th Cir.1988); *See also T.W. Elect. Service, Inc. v. Pacific Elec.
> Contractors Ass'n,* 809 F.2d 626, 631-32 (9th Cir.1987). We agree with
> the Ninth Circuit that the Supreme Court in *Matsushita,* 475 U.S. at
> 587, 106 S.Ct. at 1356, authorized "an inquiry on summary judgment
> into the 'implausibility' of inferences from circumstantial evidence, ...
> not an inquiry into the credibility of direct evidence." *McLaughlin,* 849
> F.2d at 1207. In the present case, plaintiff has presented direct evidence
> in the form of witness Sanderford's and witness Clay's testimony,
> which contradicts the account of events provided by the police. For the
> purposes of a summary judgment motion, their accounts and all
> reasonable inferences drawn from it must be accepted as true. Thus, the
> district court erred in finding plaintiff's and the two witnesses' accounts
> implausible and in granting summary judgment where issues of
> credibility were determinative of the case at hand. *Anderson v. Liberty
> Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513-14

Here, both declarants are knowledgeable, and the trier of fact should only decide

credibility after evidence, testimony, and cross-examination. It was inappropriate for

the trial court to assign credibility to witnesses who have never given sworn testimony

or have gone through the crucible of cross-examination.

Appellant brought this very issue to the attention of the district court in its Sur-

Reply brief, due to the way St. Jude tried to claim that Ms. Carter was incompetent to

testify, and warned the district court not to engage in credibility assessments in

determining whether Summary Judgment should be granted (Plaintiff's Sur-Reply Brief, R. 34, PageID# 558-562). The court apparently ignored this briefing.

###   A.    The Trial Court Erroneously Found St. Jude's Declarant To Be Credible, And Ms. Kizer's Declarant Not To Be Credible.

The trial court considered two Unsworn declarations submitted under penalty of perjury pursuant to 28 U.S.C. §1746, one by each party, with opposite conclusions. Neither of these witnesses has been through cross-examination. The court found St. Jude's declarant, Ms. Hendricks, to be credible because it is alleged that her statements of how personnel were to be used in "go live" actually occurred many months later. But this misses the entire point. Of course, everyone did what Ms. Hendricks told them to do, which was to come on campus and work closely with others.

But the question should have been, could Ms. Kizer have been accommodated during that time? Supervisor Carter says she could have easily, but Ms. Hendricks says she could not. The lower court erred by assigning credibility to one unsworn declarant over another, as this Court held in *Adams* was impermissible.

###   B.    Unresolved Issues Regarding the Appearances of St. Jude Engaging in Unethical Conduct to Conceal Ms. Carter's Identity and Whereabouts during the Discovery Process At The Expense Of Ms. Kizer Should Have Been Addressed Prior to Summary Judgment Being Granted.

Ms. Kizer alleges that St. Jude intentionally attempted to obstruct and prevent her from interviewing the immediate supervisor, Christyna Carter, and as such

36

submitted a Motion for Sanctions, which was never addressed by the District Court (Motion for Sanctions for Bad Faith Conduct, Spoliation, and Discovery Abuse, R. 40, PageID# 579-581). St. Jude claimed in depositions and declarations that Ms. Carter had left St. Jude prior to the processing of Ms. Kizer's request for accommodation. The evidence shows that was untrue (Id. at PageID# 582-583). St. Jude withheld the name and contact information for Ms. Carter throughout the discovery process, including in Initial Disclosures and also in response to discovery (Id., PageID# 579-581).

When Ms. Hendricks' Declaration appeared with the Motion for Summary Judgment, Ms. Kizer was finally able to locate and contact Ms. Carter, who completed a Declaration which was attached to the opposition to the Motion for Summary Judgment (Carter Decl., R. 32-3, PageID# 503-505). She stated that Ms. Kizer could have "easily" been accommodated in a number of ways.

However, the deadline for discovery had concluded the day the St. Jude filed its Motion for Summary Judgment, so Ms. Hendricks could not be deposed about this testimony. Ms. Kizer was looking forward to trial, then, where she could cross-examine Ms. Hendricks in front of a jury, as well as present testimony from her witness, Ms. Carter, so they could determine who actually had the knowledge critical to determining whether or not Ms. Kizer's employment had to be terminated or whether an accommodation could have been made. Thus, there were dueling

declarations of witnesses, neither of which had been through the crucible of cross-examination. The district court then erroneously went on a mission to determine the credibility of these two witnesses, analyze the facts, and then found Ms. Hendricks to be more credible. The Court even gave its reasoning as to why it found Ms. Hendricks more credible, instead of following the law and accepting all reasonable inferences drawn from Ms. Carter's testimony as true. Given the evidence provided, a reasonable juror could believe either Hendricks' or Carter's testimony about whether Ms. Kizer could have been easily accommodated. Perhaps the jury will give more weight to Ms. Hendrick's testimony at trial and ultimately win the dispute, but that determination is for them to resolve.

This Court should find that it was reversible error for the district court to accept the testimony of Ms. Hendricks over Ms. Carter, when disputes of facts should be submitted to a jury, and all reasonable inferences given to the non-moving party. The case should be remanded for trial on this basis.

## III. THE DISTRICT COURT IMPROPERLY CONSIDERED EXPERT TESTIMONY AND OUTSIDE FACTS ABOUT THE COVID-19 PANDEMIC AND VACCINE WHEN IT CONSIDERED THE REASONABLENESS OF ST. JUDE'S ACTIONS.

As stated in this brief, Ms. Kizer requested an accommodation from her employer's mandatory COVID-19 vaccine policy due to her sincerely held religious beliefs. She did not challenge the mandate nor ask for an accommodation that in any way could be construed as asking to be present among a vulnerable population or her

co-workers. Therefore, when the district court cited to the testimony of Dr. Diego Hijano about children at St. Jude being "at risk of serious complications and death from the virus" and it being "essential for St. Jude to prevent the introduction of the COVID-19 virus on campus," it was referencing not only irrelevant information, but also inadmissible expert evidence (Order, R. 42, PageID# 685-86). Dr. Hijano was not even identified by St. Jude as to who he even was to the district court, yet apparently his title "doctor" impressed the court. The district court continued on, citing to St. Jude's COMPASS Oversight Committee ("COC") that created, implemented, evaluated and modified the COMPASS Protocol as necessary" (Id., PageID# 686). COMPASS stands for "COVID-19 Monitoring, Preparedness, Screening and Surveillance. (Id.) Notably, the court cited the fact that "the COC included St. Jude executive leadership and underline experts in the areas of patient safety, biomedical operations, infectious disease, infection control, information technology, security, facilities planning, risk communication, human resources, law, and occupational health" (Id.) It continued to discuss how immunocompromised children were at risk of complications to COVID-19, and why it implemented the vaccine policy (Id., PageID# 687).

None of these facts are material to Ms. Kizer's case, because she did not challenge the policy. She simply wanted to be accommodated for her religious beliefs not to comply with the mandatory vaccine policy, and work from home. However, Ms. Kizer did object to this entire line of facts being discussed or considered on Summary

Judgment because no expert disclosures or reports were ever produced in discovery, and the district court noted this objection. (Pl. Resp. to Def. Stmt. of Material Facts, R. 32-4, #12, PageID#510) However, the district court erroneously considered these facts, claiming they were "internal business judgments" and admissible as "lay witness opinion testimony that is rationally based on the witnesses' perceptions under FRE 701" (Order Granting Summary Judgment, R. 42 at PageID# 687, footnote 3). But that is not what the court wrote in its own opinion. It stated:

> Then in July 2021, "St. Jude made an internal business judgment <u>through the expertise of its own scientific community and based on data and studies available to it</u>" to implement a mandatory COVID-19 vaccine policy to decrease the spread of COVID-19 on its campus.[3]
> (ECF No. 32-4 at PageID 515; *see also* ECF No. 31-10 at PageID 259.)

This was not lay witness opinion. The COC was clearly made up of "experts" as cited to by the court itself. "Data and studies available to a scientific community" is exactly what FRCP 26(a)(2)(B), FRE 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) contemplates as "expert" opinion. These topics must be disclosed in expert reports, with expert witnesses declared who can be cross-examined, and if need be, countervailing experts obtained by the opposing party. Topics such as biomedical operations, infectious disease, and infection control are not "lay" topics. Facts regarding whether children with cancer are more vulnerable than other populations is expert information. Ms. Kizer was blindsided with these topics at Summary Judgment, with no possible way to counter any of the

opinions, if necessary. It was error for the court to consider and cite to these facts and opinions, and they should not be admissible at trial, either, should this Court reverse the Summary Judgment.

Furthermore, the court went beyond relying upon the expertise of the St. Jude medical community and did its own research to bolster the necessity of the vaccine mandate at St. Jude (Memorandum Order, R. 42, PageID# 687, footnote 4). The Court cites the Center for Disease Control and Prevention, OSHA, and other scientific websites and studies regarding the vaccine. It was in no way permissible for the district court to do its own scientific research and bolster St. Jude when it wrote its memorandum granting Summary Judgment in this case. This was even more egregious than admitting expert scientific evidence and calling it "lay testimony." Ms. Kizer did not challenge the vaccine, so this was an excursion down an unnecessary rabbit trail. However, it does go to show the bias of the district court in strongly supporting St. Jude's actions from start to finish, and taking an obviously dim view of someone like Ms. Kizer, a litigant in his court who dared decide not to take the vaccine, and follow her conscience based on her religious beliefs. This Court, should consider the district court's personal research entered in support of St. Jude's actions an abuse of discretion. Likewise, the Court should also consider the district court's allowance of expert testimony about safety and efficacy and vulnerable populations, over the objection of Appellant, an abuse of discretion. It

created an unfair advantage and was not relevant to the case. Under the Rules of Evidence, the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Daubert* at 589. It is also unreliable because Ms. Kizer never was afforded an opportunity to challenge these opinions and alleged facts with her own research and experts, to the extent they actually are relevant to the case. These extraneous facts should be excluded and not allowed as consideration in the Motion for Summary Judgment, or at trial.

## CONCLUSION

Appellant would ask this Court to reverse the judgment of the district court, and remand the case to the district court for trial.

Respectfully submitted,

/s/ Kristin Mosher
Kristin Mosher (BPR #19772)
The Law Office of Kristin Fecteau, PLLC
5543 Edmonson Pike, Suite 229
Nashville, Tennessee 37211
(615) 496-5747
kristin@fecteaulaw.com

/s/ Ron Hackenberg
Ron Hackenberg, Esq.
Pacific Justice Institute
(228) 471-0077
rhackenberg@pji.org

*Counsel for Plaintiff Lynn Kizer*

42

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.  This brief complies with the length limitation of FRAP 32 and 6 Cir. R. 32 because it does not exceed 13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).


2.  This brief complies with the requirements of Fed. R. App. P. 32(a) and Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface using "MS Word 2023" with Times New Roman, size 14 font.


/s/ Kristin Mosher, Esq.
Kristin Mosher (BPR #19772)
The Law Office of Kristin Fecteau, PLLC
5543 Edmonson Pike, Suite 229
Nashville, Tennessee 37211
(615) 496-5747
kristin@fecteaulaw.com

Counsel for Appellant, May 20, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2024, this brief filed electronically with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Kristin Mosher</u>

Kristin Mosher (BPR #19772)
The Law Office of Kristin Fecteau, PLLC
5543 Edmonson Pike, Suite 229
Nashville, Tennessee 37211
(615) 496-5747
kristin@fecteaulaw.com

Counsel for Appellant

# ADDENDUM

## Designation of Relevant District Court Documents

**Pursuant to 6th Circuit Rules 28(a) and 30(g), this addendum includes the relevant documents from the district court record:**

| Document | Record Entry # | Page ID# |
|---|---|---|
| Verified Complaint | RE 1 | 1-15 |
| Answer | RE 10 | 63-71 |
| Defendant's Motion for Summary Judgment | RE 34 | 263 - 264 |
| Defendant's Memorandum of Law In Support of Summary Judgment | RE 31-1 | 120-139 |
| Defendant's Statement of Undisputed Material Facts | RE 31-4 | 290 - 306 |
| Bottenfield Deposition | RE 32-1<br>RE 33-2 | 471-491<br>545-550 |
| Bottenfield Declaration | RE 31-5 | 173-184 |
| Plaintiff's Response to Summary Judgment | RE 32 | 450-469 |
| Speck Deposition | RE 32-2 | 493-496 |

| | | |
|---|---|---|
| Carter Declaration | RE 32-3 | 503-506 |
| Plaintiff's Additional Facts in Dispute | RE 32-3 | 497-506 |
| Plaintiff's Response to Defendant's Stmt. of Undisputed Facts | RE 32-4 | 507-524 |
| Plaintiff's Sur-Reply | RE 34 | 558-562 |
| Memorandum in Support of Motion For Sanctions for Bad Faith Conduct and Discovery Abuse | RE 40-1 | 572-591 |
| Order Granting Summary Judgment | RE 42 | 684-724 |
| Entry of Judgment | RE 43 | 725 |