# United States Court of Appeals
## For the Sixth Circuit

---

## CASE NO.  24-5207

---

# LYNN KIZER,
**Plaintiff-Appellant,**

v.

# ST. JUDE CHILDREN'S RESEARCH HOSPITAL, INC.
**Defendant-Appellee.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION
Hon. Thomas L. Parker, Case No. 2:22-cv-02620-TLP-cgc**

---

**BRIEF OF APPELLEE
ST. JUDE CHILDREN'S RESEARCH HOSPITAL, INC.**

---

**Lisa A. Krupicka
Sarah E. Stuart
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
(901) 524-5000 (T)
(901) 524-5024 (F)
lkrupicka@bpjlaw.com
sstuart@bpjlaw.com**

*Counsel for Appellee St. Jude Children's Research Hospital, Inc.*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................... i

TABLE OF AUTHORITIES .............................................................. iii

STATEMENT REGARDING ORAL ARGUMENT ...............................1

STATEMENT OF ISSUES .................................................................2

STATEMENT OF THE CASE............................................................3

    **I.**    FACTS................................................................................4

        **A.**    Ms. Kizer's Employment at St. Jude ...........................4

        **B.**    St. Jude Implements the COMPASS Protocol to Protect its Vulnerable Patients from COVID-19. ........................................6

        **C.**    St. Jude decides to implement a vaccine mandate. ....................9

        **D.**    St. Jude creates the Vaccine Accommodation Committee to consider requests for religious and disability-based exemptions from the vaccine mandate. ......................................................10

        **E.**    The Vaccine Accommodation Committee considers and denies Ms. Kizer's request to be exempt from the vaccine mandate...12

    **II.**    PROCEDURAL HISTORY ................................................14

SUMMARY OF THE ARGUMENT ....................................................17

ARGUMENT ..................................................................................19

    **I.**    THE DISTRICT COURT CORRECTLY DETERMINED THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER ST. JUDE COULD ACCOMMODATE MS. KIZER ABSENT UNDUE HARDSHIP. ......................................................19

        **A.**    Standard of Review.................................................................19

**B.**    The Carter Declaration Did Not Create a Genuine Issue of Material Fact as to the Existence of an Undue Hardship..........22

    i.    It is Undisputed That Ms. Kizer's Existing Job Could Not Be Performed Remotely. ................................................22

    ii.    It is Undisputed That St. Jude Had No Jobs That Could Be Performed 100% Off-Campus. .................................28

    iii.    St. Jude Was Not Required, As A Matter of Law, to Assign Another Employee to Perform an Essential Function of Ms. Kizer's Job to Accommodate Her Request for Religious Accommodation. ......................................................31

    iv.    There is No Evidence in the Record to Establish that Ms. Kizer Had a Year Before She Would Be Required to Work on Campus, and the District Court Correctly Held that Even a Temporary Accommodation Would be an Undue Hardship. ......................32

**C.**    Plaintiff Has Abandoned on Appeal the Issue of Whether the District Court Correctly Found that Ms. Kizer's Continued In-Person Presence at St. Jude Constitutes a Direct Safety Risk. .33

**D.**    Plaintiff Herself Claims the Testimony of Dr. Diego Hijano Has No Relevance to Her Case on Appeal, and Therefore the Issue of His Status as an Expert or Lay Witness is Not in Controversy 35

**II.**    PLAINTIFF'S REMAINING BASES FOR OVERTURNING SUMMARY JUDGMENT ARE NOT SUPPORTED BY THE LAW. ..........................................................................37

CONCLUSION ..............................................................39

CERTIFICATE OF COMPLIANCE ....................................41

CERTIFICATE OF SERVICE ...........................................42

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............43

ii

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)......................................................................................19

*Antredu v. Massachussets Department of Youth Services*,
   2024 WL 1539725 (D. Mass. Apr. 9, 2024)....................................................34

*Barrington v. United Airlines*,
   566 F. Supp. 3d 1102 (D. Colo. 2021) .................................................. 31, 38

*Bruederle v. Louisville Metro Government*,
   687 F.3d 771 (6th Cir. 2012) ........................................................................20

*Bruff v. North Mississippi Health Services, Inc.*,
   244 F.3d 495 (5th Cir. 2001) ........................................................................31

*Celotex Corporation v. Catrett*,
   477 U.S. 317 (1986)......................................................................................19

*DeVore v. University of Kentucky Board of Trustees*,
   693 F. Supp. 3d 757 (E.D. Ky. 2023)..................................................... 38, 33

*Does 1-6 v. Mills*,
   16 F.4th 20 (1st Cir. 2021) ...........................................................................39

*Draper v. US Pipe & Foundry Co.*,
   527 F.2d 515 (6th Cir. 1975) ........................................................................34

*E.E.O.C. v. Townley Engineering & Manufacturing Company. Co.*,
   859 F.2d 610 (9th Cir. 1988) ........................................................................39

*E.E.O.C. v. Texas Hydraulics, Inc.*,
   583 F. Supp. 2d 904 (E.D. Tenn. 2008) ........................................................21

*Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*,
   200 F. Supp. 3d 553  (E.D. Pa. 2016)............................................................20

*George v. Home Depot Inc.*,
   51 F. App'x 482 (5th Cir. 2002) ...................................................................31

*Groening v. Glen Lake Community Schools*,
    884 F.3d 626 (6th Cir. 2018) ..........................................................................19

*Groff v. DeJoy*,
    600 U.S. 447 (2023)............................................................................... *passim*

*Haskins v. Bio Blood Components*,
    2023 WL 2071483 (W.D. Mich. Feb. 17, 2023) ...........................................38

*Kleiber v. Honda of America Mfg., Inc.*,
    485 F.3d 862 (6th Cir. 2007) ........................................................................38

*Lake v. HealthAlliance Hospital Broadway Campus*,
    2024 WL 3226273 (N.D.N.Y. June 27, 2024) .............................................34

*Lord v. Saratoga Capital, Inc.*,
    920 F. Supp. 840 (W.D. Tenn. 1995) ...........................................................19

*Love v. St. Jude Children's Research Hosp.*,
    2022 WL 985952 (W.D. Tenn. Mar. 11, 2022)................................. 26, 30, 31

*Matsushita Electric Industrial Co. v. Zenith Radio Corporation*,
    475 U.S. 574 (1986)......................................................................................27

*Morehouse v. Steak N Shake*,
    938 F.3d 814 (6th Cir. 2019) ........................................................................19

*Phelps v. Optima Health, Inc.*,
    251 F.3d 21 (1st Cir. 2001)...........................................................................31

*Small v. Memphis Light, Gas & Water*,
    952 F.3d 821 (6th Cir. 2020) ........................................................................19

*Smith v. Pyro Min. Co.*,
    827 F.2d 1081 (6th Cir. 1987) ......................................................................21

*Speer v. UCOR, LLC*,
    2022 WL 3971036 (E.D. Tenn. Aug. 31, 2022)..................................... 27, 33

*Tepper v. Potter*,
    505 F.3d 508 (6th Cir. 2007) ........................................................................20

*Together Employees v. Mass General Brigham, Inc.*,
573 F. Supp. 3d 412 (D. Mass. 2021) .................................... 20, 29, 34, 39

*Virts v. Consolidated Freightways Corp.*,
285 F.3d 508 (6th Cir. 2002) ................................................................ 21, 39

*Wright v. Murray Guard, Inc.*,
455 F.3d 702 (6th Cir. 2006) ................................................................ 26, 30

## **Statutes**

42 U.S.C. § 2000e *et seq.* (Title VII) ................................................................ *passim*

## **Rules**

Fed. R. Civ. P. 56 ................................................................................................ *passim*

Western District of Tennessee Local Rule 56.1 ...................................................... 27

## STATEMENT REGARDING ORAL ARGUMENT

Appellee St. Jude's Children's Research Hospital ("Appellee" or "St. Jude") does not request oral argument and does not believe that oral argument is warranted in this case because it involves the straightforward application of well-settled principles of federal law.

## <u>STATEMENT OF ISSUES</u>

I.   Whether the district court correctly concluded there was no dispute of material fact that St. Jude would suffer an undue hardship to accommodate Ms. Kizer.

II.  Whether Plaintiff abandoned on appeal any argument related to the safety concerns of St. Jude as an undue hardship, including related evidentiary challenges.

## <u>STATEMENT OF THE CASE</u>

St. Jude operates a pediatric research hospital with a mission to treat and find cures for children with cancer and other catastrophic childhood diseases. In 2021, St. Jude implemented a Mandatory COVID-19 Vaccination Policy for its employees. Plaintiff Lynn Kizer ("Ms. Kizer" or "Plaintiff") requested an exemption from this requirement based on a purported religious conflict with the COVID-19 vaccination mandate. St. Jude considered her request and determined that Ms. Kizer could not perform her essential job functions 100% remotely and that her continued in-person presence while unvaccinated constituted a safety risk to its patients and staff and otherwise imposed a financial hardship on St. Jude. Ms. Kizer did not comply with the mandate, and her employment was terminated.

On September 16, 2022, Plaintiff filed the instant suit in the United States District Court for the Western District of Tennessee, wherein Plaintiff claimed that St. Jude violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, by failing to accommodate her religious objection to the COVID-19 vaccination mandate. The district court granted summary judgment in favor of St. Jude on February 9, 2024, finding that accommodating Ms. Kizer would have caused undue burden to St. Jude. This appeal followed.

## I.  FACTS

### A.    Ms. Kizer's Employment at St. Jude

St. Jude is a world-renowned pediatric research hospital with a mission to treat and find cures for children with cancer and other catastrophic childhood diseases. [Declaration of Dana Bottenfield ("Bottenfield Decl."), Ex. A to St. Jude's Statement of Undisputed Material Facts ("Def.'s SUMF"), RE 31-5, PageID # 174]. Although she had previously worked at St. Jude in other roles, on March 29, 2021, Plaintiff transferred to a new position working on the "Epic" project at St. Jude. [Bottenfield Decl., RE 31-5, PageID # 182; Declaration of Collette Hendricks ("Hendricks Decl."), Ex. D to Def.'s SUMF, RE 31-19, PageID ## 413-414].  The Epic project's mission was to transition St. Jude's Electronic Health Record ("EHR") from its then-current software system to a new one designed by Epic Systems ("Epic"). [Hendricks Decl., RE 31-19, PageID ## 413-416; Bottenfield Decl., RE 31-5, PageID ## 182-183].  A team of Epic employees, third party contractors and St. Jude employees spent two (2) years planning and implementing this project, with a scheduled "go live" date in October 2022. [Hendricks Decl., RE 31-19, PageID ## 413-416; Bottenfield Decl., RE 31-5, PageID ## 182-183].

Plaintiff's job title was EHR Applications Analyst. [Hendricks Decl., RE 31-19, PageID # 414].  As an EHR Applications Analyst, Plaintiff supported the

Ambulatory and Research Team, with her role dedicated to implementing the Epic software system for the medical records maintained by St. Jude's clinical researchers. [Deposition of Lynn Kizer ("Kizer Dep."), Ex. B to Def.'s SUMF, RE 31-17, PageID ## 358-359; Hendricks Decl., RE 31-19, PageID # 414]. St. Jude is unique in that sixty percent (60%) of St. Jude patients are being treated as part of a clinical research protocol, making implementation of the Epic system significantly more difficult and complex than implementation at a standard healthcare institution of similar size. [Bottenfield Decl., RE 31-5, PageID # 182; Hendricks Decl., RE 31-19, PageID # 414]. As the project progressed towards its 2022 "go-live," Ms. Kizer would routinely be required to meet with and shadow clinicians, nurses, laboratory personnel, pharmacists and others involved in clinical research, often in clinical areas, to gather information to be used in design and refinement of the system to make sure their clinical research needs are met. [Hendricks Decl., RE 31-19, PageID ## 414-416; Rule 30(b)(6) Deposition of Dana Bottenfield ("Bottenfield Dep."), Ex. C to Def.'s SUMF, RE 31-18, PageID # 395; Ex. 11 to Bottenfield Decl., RE 31-16, PageID ## 347-348]. Her job would increasingly involve this "at the elbow" support. [Hendricks Decl., RE 31-19, PageID ## 414-416; Bottenfield Dep., RE 31-18, PageID ## 394-395; Bottenfield Decl., RE 31-5, PageID ## 182-183; Ex. 11 to Bottenfield Decl., RE 31-16, PageID ## 347-348].

**B.     St. Jude Implements the COMPASS Protocol to Protect its Vulnerable Patients from COVID-19.**

By the time that the COVID-19 pandemic was declared in March 2020, St. Jude was already aware that this particular virus created a high risk of serious complications and death to its patient population, both because they had cancer and because the treatments they were receiving compromised their immune system. [Declaration of Dr. Diego Hijano, MD, Msc. ("Hijano Decl."), Exhibit E to Def.'s SUMF, RE 31-20, PageID ## 418-419; Bottenfield Decl., RE 31-5 at PageID # 175]. St. Jude had to develop measures to protect its patients from this risk and to protect its employees who are responsible for their care.  [Rule 30(b)(6) Deposition of Diego Hijano ("Hijano Dep."), Ex. F to Def.'s SUMF, RE 31-22, PageID ## 433-442].

In the early days of the pandemic, when no vaccine was available, St. Jude focused its efforts on preventing the introduction of COVID-19 on its campus. [*See generally* Def.'s SUMF, RE 31-4, PageID ## 164-167; Bottenfield Decl., RE 31-5, PageID ## 175-178; Exs. 1-4 to Bottenfield Decl., RE 31-6, 31-7, 31-8, 31-9, PageID ## 185-257]. At tremendous cost both in time and expense, St. Jude formed an oversight committee composed of St. Jude executive leadership and experts in the areas of patient safety, biomedical operations, infectious disease, infection control, information technology, security, facilities planning, risk communications, human resources, law, and occupational health to create and maintain the COVID-19 Monitoring, Preparedness, Screening and Surveillance ("COMPASS") Protocol.

6

[Bottenfield Dep., RE 31-18, PageID ## 374-376; Bottenfield Decl., RE 31-5, PageID # 175]. The key points of the COMPASS Protocol involved:

1.    St. Jude sent all non-essential employees off campus to work from home.

2.    For essential employees who had to come on campus, strict adherence to COMPASS guidelines was required, including the requirement that all employees wear surgical grade or N-95 masks when not in their enclosed office, and observing six-foot physical distancing.

3.    Every room in every building on campus was mapped to determine how many employees could safely occupy it and still maintain a six-foot distance. The campus was zoned to minimize foot traffic into patient areas.  To enforce St. Jude's COVID-19 zoning, St. Jude created "badge buddies," which employees wore behind their ID badge to indicate which zones they were allowed to access.

4.    St. Jude recruited 56 employees to serve as "COVID Captains" who were responsible for monitoring and enforcing St. Jude's COMPASS Protocol, as well as reporting violations.

5.    St. Jude required all employees coming on campus to be screened for COVID-19 symptoms daily. Security checkpoints were set up on campus and manned by St. Jude employees. A smartphone application was developed for

employees to check in electronically and be given a "green" or "yellow" pass to enter campus prior to reporting to work and to enter every building at St. Jude.

6.    Employees were assigned to perform contact tracing to identify, test, and isolate any potential carrier of COVID-19.

7.    In April 2020, St. Jude introduced asymptomatic sample collection and polymerase chain reaction (PCR) testing of all employees coming on campus. St. Jude employees volunteered to take nasal swab samples and St. Jude laboratory personnel tested those samples to detect the virus. At its height, this testing was conducted up to 5,000 times a week. The results were used to conduct further research on protecting St. Jude patients and employees from COVID-19.

[Bottenfield Decl., RE 31-5, PageID ## 175-178; Exs. 1-4 to Bottenfield Decl., RE 31-6, 31-7, 31-8, 31-9, PageID ## 185-257; Bottenfield Dep., RE 31-18, PageID ## 372-382; Hijano Decl., RE 31-20, PageID ## 418-420; Hijano Dep., RE 31-22, PageID ## 443-449].

Maintaining this complex scheme was vital to protecting St. Jude patients but was also a tremendous drain on St. Jude's resources and a distraction from its mission. [Bottenfield Decl., RE 31-5, PageID ## 176, 179, Ex. 7 to Bottenfield Decl., RE 31-12, PageID # 335].   The total cost of maintaining St. Jude's COMPASS

8

Protocol in fiscal year 2021 was over $13 million. [Bottenfield Decl., RE 31-5, PageID # 179; Ex. 7 to Bottenfield Decl., RE 31-12, PageID # 335]. The COVID-19 vaccine mandate (discussed below) allowed St. Jude to dismantle many of the costly measures in the Protocol, by which St. Jude reduced its COVID-19 related expenses by over $6 million in 2022 over 2021. [Bottenfield Decl., RE 31-5, PageID # 184; Ex. 7 to Bottenfield Decl., RE 31-12, PageID # 335].

### C.    St. Jude decides to implement a vaccine mandate.

After the COVID-19 vaccine was approved for emergency use in December 2020, St. Jude began to consider whether it should impose a vaccine mandate. At that time, no vaccine had been approved for use with children, so it remained St. Jude's highest priority to prevent the introduction of the virus on campus. St. Jude used its own data and research, as well as other publicly available research, to internally conclude that vaccinated employees were statistically less likely to introduce the virus on campus. [Hijano Decl., RE 31-20, PageID ## 418-420; Hijano Dep., RE 31-22, PageID ## 439-446; Bottenfield Decl., RE 31-5, PageID # 179; Ex. 6 to Bottenfield Decl, RE 31-11, PageID ## 268-333].

Moreover, St. Jude could not continue to operate indefinitely with only a small portion of its employees on campus and still fulfill its mission of treating and curing children with cancer. The COMPASS Protocol was already an incredible drain on St. Jude resources and personnel and would become even more so once more

9

employees returned to campus. [Bottenfield Dep., RE 31-18, PageID # 399; Bottenfield Decl., RE 31-5, PageID # 179; Ex. 7 to Bottenfield Decl., RE 31-12, PageID # 335].  St. Jude determined that a COVID-19 vaccine mandate could allow St. Jude to resume normal operations while still protecting its patient population. [Bottenfield Dep., RE 31-18, PageID ## 375-382, 410-411; Bottenfield Decl., RE 31-5, PAgeID ## 178-179; Hijano Decl., RE 31-20, PageID ## 418-420; Hijano Dep., RE 31-22, PageID ## 439-442]. For all these reasons, St. Jude, through its CEO, made an internal business judgment to impose a COVID-19 vaccine mandate beginning in July 2021. [Bottenfield Decl., RE 31-5, PageID ## 178-179; Exs. 5, 6, 7 to Bottenfield Decl., RE 31-10, 31-11, 31-12, PageID ## 259-335; Hijano Decl., RE 31-20, PageID ## 418-420].

> **D.    St. Jude creates the Vaccine Accommodation Committee to consider requests for religious and disability-based exemptions from the vaccine mandate.**

St. Jude was aware that Title VII of the Civil Rights Act of 1964 required it to determine if employees with a religious objection to the vaccine could be accommodated without imposing an undue hardship on St. Jude.  [Bottenfield Dep., RE 31-18, PageID ## 398-399, 408-410]  To fairly evaluate requests for religious accommodations, as well as disability-based accommodations under the Americans with Disabilities Act ("ADA"), St. Jude established a Vaccine Accommodation Committee (the "Committee"), composed of St. Jude employees with expertise in

infectious disease, occupational health, human resources and law, and developed a systematic process and standard for evaluation of the requests. [Bottenfield Decl., RE 31-5, PageID # 180; Ex. 8 to Bottenfield Decl., PageID # 337-338].

Under this process, employees were given until August 18, 2021 to fill out an online form requesting a religious or disability-based accommodation. [Bottenfield Decl., RE 31-5, PageID ## 178-179; Ex. 8 to Bottenfield Decl., PageID # 337-338]. By the deadline, sixty-two (62) employees submitted requests for religious accommodation, including Plaintiff. [Bottenfield Decl., RE 31-5, PageID # 183; Ex. 10 to Bottenfield Decl., RE 31-15, PageID # 345[1]]. Plaintiff filed hers on July 29, 2021. [Ex. 8 to Kizer Dep., RE 31-17, PageID ## 362-363; Bottenfield Decl., RE 31-5, PageID ## 179-180, Ex. 9 to Bottenfield Decl., RE 31-14, PageID ## 340-341]. The Committee assumed without deciding that all requests for religious accommodation were based on sincerely held religious beliefs. [Bottenfield Dep., RE 31-18, PageID ## 384-385].

Human resources representatives on the Committee shared the allocation of duties related to evaluation of each request to determine the extent to which the employee seeking the request would have contact with patients or whose job duties

---

[1] RE 31-15, Exhibit 10 to the Declaration of Dana Bottenfield "COVID-19 Accommodation Process Notes (Excel Spreadsheet)" was submitted *in camera* to the district court in native format with PII of persons who sought medical accommodations redacted. It is available with the district court record.

would require him or her to regularly traverse areas in which patients and their families congregated. [Bottenfield Dep., RE 31-18, PageID ## 384-388; Bottenfield Decl., RE 31-5, PageID ## 180-181]. The process for obtaining this information varied depending on the request. [Bottenfield Dep., RE 31-18, PageID ## 387-388; Bottenfield Decl., RE 31-5, PageID ## 180-181]. Committee members usually spoke to the employee's supervisor about his or her job duties but may have also spoken directly to the employee to obtain information needed to make a decision. [Bottenfield Dep., RE 31-18, PageID ## 386-387; Bottenfield Decl., RE 31-5, PageID ## 180-181].

This information was reported back to the Committee, which maintained a detailed spreadsheet on the status of each request, the information collected related to the request, and whether the request was granted and why. [Bottenfield Dep., RE 31-18, PageID ## 387-388; Bottenfield Decl., RE 31-5, PageID ## 180-181; Ex. 10 to Bottenfield Decl., RE 31-15 (submitted *in camera* to district court)]. Each request was voted on by the members of the Committee, and only a unanimous vote could decide the matter. [Bottenfield Dep., RE 31-18, PageID ## 385-386; Bottenfield Decl., RE 31-5, PageID # 180-181].

### E. The Vaccine Accommodation Committee considers and denies Ms. Kizer's request to be exempt from the vaccine mandate.

Plaintiff completed the online form requesting that she be exempt from receiving the COVID-19 vaccine on religious grounds, explaining her belief that her

job duties did not involve patient contact and that in any event she could perform all of her duties remotely. [Ex. 9 to Bottenfield Decl., RE 31-14, PageID ## 340-344]. St. Jude spoke to Colette Hendricks, the Epic Project Director and Plaintiff's ultimate supervisor, who indicated that Plaintiff's job duties would require her to regularly interact with clinical research personnel, including in clinical areas, and that her job could not be performed 100% remotely. [Bottenfield Dep., RE 31-18, PageID ## 387-390, 392-395; Bottenfield Dep., RE 33-2, PageID # 547; Bottenfield Decl., RE 31-5, PageID ## 182-183, Hendricks Decl., RE 31-19, PageID ## 414-416; Ex. 11 to Bottenfield Decl, RE 31-16, PageID ## 347-348; Kizer Dep., RE 33-3, PageID # 553].

When this information was presented to the Committee, it voted unanimously to deny her request for an accommodation. [Bottenfield Decl., RE 31-5, PageID # 183; Bottenfield Dep., RE 31-18, PageID ## 396-397]. Plaintiff was sent a letter dated August 20, 2021 informing her of the Committee's decision and the basis for the decision. [Kizer Dep. & Ex. 9, RE 31-17, PageID ## 360, 364-365]. In all, the Committee approved nine (9) requests for a religious accommodation, all for employees whose job positions could be modified so that they could be banned from campus for the foreseeable future and still perform their job duties. [Bottenfield Decl., RE 31-5, PageID ## 183-184; Bottenfield Dep., RE 1-18, PageID ## 391, 402].

13

Like all other employees whose request for accommodation was denied (or who had otherwise not submitted evidence of vaccination), Plaintiff was put on an unpaid leave of absence starting September 9, 2021, during which time she had the opportunity to change her mind and become vaccinated. [Bottenfield Decl., RE 31-5, PageID # 178; Ex. 5 to Bottenfield Decl., RE 31-10, PageID ## 259-264]. If she had not received at least one dose of a vaccine (assuming she chose a vaccine requiring two doses) before September 23, 2021, her employment would be terminated. Plaintiff chose not to be vaccinated, and her employment was accordingly terminated on September 24, 2021. [Bottenfield Decl., RE 31-5, PageID ## 178, 184; Ex. 5 to Bottenfield Decl., RE 31-10, PageID ## 259-264]. In all, out of more than 5,000 employees, St. Jude terminated 27 employees for refusing to be vaccinated, eight of whom had never sought an accommodation of any kind. [Bottenfield Decl., RE 31-5, PageID # 184].

## II. PROCEDURAL HISTORY

Ms. Kizer filed suit against St. Jude in September 2022. [Complaint, RE 1, PageID ## 1-15], alleging that St. Jude had discriminated against her on account of her religion by refusing to grant her an exemption from the vaccine mandate, in violation of Title VII of the Civil Rights Act of 1964. [*Id.* at PageID ## 10-15].

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, St. Jude filed its Motion for Summary Judgment and supporting materials on July 31, 2023

[Defendant's Motion for Summary Judgment, RE 31, PageID ## 118-449], setting forth that there was no genuine issue of material fact that granting Ms. Kizer an accommodation would have cause it undue hardship. St. Jude set forth evidence that (1) St. Jude determined that Ms. Kizer's essential job functions would require her to work on clinical floor and other areas of the campus where patients were present, so that her unvaccinated status would jeopardize the health and safety of its vulnerable patient population; (2) continuing to maintain the COMPASS Protocol was prohibitively difficult and expensive to maintain indefinitely; and (3) Ms. Kizer's essential job functions could not be performed 100% remotely. [Defendant's Memorandum in Support of its Motion for Summary Judgment, RE 31-1, PageID ## 120-139).

Ms. Kizer filed her response in opposition on August 28, 2023. [Plaintiff's Opposition to Motion for Summary Judgment, RE 32, PageID ## 450-524]. St. Jude filed a Reply on September 11, 2023. [St. Jude's Reply in Support of its Motion for Summary Judgment, RE 33, PageID ## 525-531]. Plaintiff filed a Sur-Reply on September 13, 2023. [Plaintiff's Sur-Reply in Opposition to Motion for Summary Judgment, RE 34, PageID ## 558-562].

On February 9, 2024, the district court granted St. Jude's Motion for Summary Judgment. [Order Granting Motion for Summary Judgment, RE 42, PageID ## 684-724]. The court entered judgment in favor of St. Jude on February 12, 2024.

[Judgment, RE 43, PageID # 725].  Ms. Kizer filed a Notice of Appeal on March 7, 2024. [Notice of Appeal, RE 44, PageID # 726].  The Notice of Appeal states that she is appealing from the Memorandum and Order Granting Summary Judgment to St. Jude and Judgment entered by the district court on February 12, 2014.  [Notice of Appeal, RE 44, PageID # 726].

## SUMMARY OF THE ARGUMENT

St. Jude is a pediatric research hospital that treats children with cancer and other catastrophic diseases. In order to protect its vulnerable patient population and the employees who care for them from COVID-19, St. Jude, at great financial and operational expense, implemented the COMPASS Protocol to prevent the introduction of COVID-19 on its campus. When the COVID-19 vaccine was approved, St. Jude, in its business judgment, determined that implementing a vaccine mandate was the best way to protect its patients and employees and would enable it to gradually dismantle the COMPASS Protocol. Plaintiff claimed her religious beliefs conflicted with St. Jude's Mandatory COVID-19 Vaccination Policy and requested the accommodation of working remotely. Based on the input of the ultimate supervisor of the project of which Plaintiff was a team member, St. Jude determined that the essential functions of Plaintiff's job required her to be regularly on campus, including on clinical floors, and that her job could not therefore be performed 100% remotely. Consequently, it denied Plaintiff's accommodation request and terminated Plaintiff's employment when she failed to comply with its Policy.

At summary judgment, St. Jude established that there is no dispute of material fact that it would have been an undue hardship to accommodate Plaintiff's religious objections. The district court correctly found that the Declaration of Christyna

Carter (the "Carter Declaration") contained nothing more than unsubstantiated allegations and unsupported contentions and so could not be used to create a genuine dispute with St. Jude's material facts.

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY DETERMINED THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER ST. JUDE COULD ACCOMMODATE MS. KIZER ABSENT UNDUE HARDSHIP.

### A. Standard of Review

Ms. Kizer has appealed the district court's grant of summary judgment, which is reviewed de novo. *Small v. Memphis Light, Gas & Water*, 952 F.3d 821, 824 (6th Cir. 2020) (citing *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018)). To survive a summary judgment motion, once the moving party establishes there are no genuine issues of material fact, the non-movant must "establish . . . every element of its case on which it will have the burden at trial." *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 846 (W.D. Tenn. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986)). A material fact is one that would affect "the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[T]o defeat a motion for summary judgment, the evidence must be such that a reasonable jury could return a verdict for the non-moving party." *Morehouse v. Steak N Shake*, 938 F.3d 814, 818 (6th Cir. 2019) (quoting *Anderson*, 477 U.S. at 248) (internal marks omitted). To satisfy their burdens of proof, "both parties are required to either cite to particular parts of materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that

an adverse party cannot produce admissible evidence to support the fact." *Bruederle v. Louisville Metro Gov't,* 687 F.3d 771, 776 (6th Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(1)) (internal marks omitted).

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice to discharge an employee because of their religion.  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of religious discrimination and survive summary judgment, Plaintiff is first required to establish (1) she has a sincere religious belief that conflicts with an employment requirement;[2] (2) she informed the employer of the conflict; and (3) she was discharged or disciplined for failing to comply with the conflicting requirement.  *Tepper v. Potter,* 505 F.3d 508, 514 (6th Cir. 2007).  If Plaintiff establishes the prima facie case, the burden shifts to St. Jude

---

[2] For purposes of summary judgment only, St. Jude did not dispute this element of the prima facie case, as it did not question the sincerity of its employees' claimed religious beliefs when reviewing requests for accommodation.  [Order Granting Summary Judgment, RE 42, PageID # 692 n.5].  It is, of course, Plaintiff's burden to establish the *prima facie* case, including that her objection to the COVID-19 vaccination is based on her *religious* beliefs "as opposed to philosophical, medical, or scientific beliefs, or personal fears or anxieties" that are in conflict with St. Jude's Mandatory COVID-19 Vaccination Policy.  *Together Emps. v. Mass General Bingham Inc.*, 573 F. Supp. 3d 412, 440 (D. Mass. 2021) (noting both that "most, if not all, organized religions of any size in the United States do not oppose COVID-19 vaccination" and that Title VII's "capacious definition" of religion makes it difficult to challenge); *see also Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 200 F. Supp. 3d 553, 560-61 (E.D. Pa. 2016), *aff'd* 877 F.3d 487 (3d Cir. 2017) (rejecting assertions that an objection to vaccination based on safety and efficacy concerns amounted to religious beliefs).

to show that it could not reasonably accommodate the employee without undue hardship. *Id.* (quoting *Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 516 (6th Cir. 2002)).

In evaluating St. Jude's decision to deny Plaintiff's request for an accommodation, the court first looks at what steps the employer took to accommodate the employee. *E.E.O.C. v. Tex. Hydraulics, Inc*., 583 F. Supp. 2d 904, 909 (E.D. Tenn. 2008). Title VII does not require that an employer "actually implement all of the considered accommodations in an effort to determine whether they are, in fact, unduly burdensome." *Id.* at 909 (citation omitted). An accommodation causes undue hardship to an employer "when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023).[3] This is a "case-by-case" analysis, wherein courts must consider the "unique circumstances of the individual employer-employee relationship." *Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987) (citation omitted).

---

[3] St. Jude filed its Motion for Summary Judgment shortly after the Supreme Court's decision in *Groff*. St. Jude raised in its Motion a question of whether *Groff* is the appropriate governing standard because retroactive liability will produce inequitable results, as St. Jude relied on the longstanding interpretation by courts that any hardship that was more than *de minimis* constitutes an undue burden. [Mem. in Support of Motion for Summary Judgment, RE 31-1 at PageID # 129 n. 4]. Because the district court rightfully concluded that St. Jude nonetheless meets the clarified *Groff* standard, St. Jude does not raise that argument on appeal.

**B. The Carter Declaration Did Not Create a Genuine Issue of Material Fact as to the Existence of an Undue Hardship.**

The primary issue raised on appeal by Plaintiff is whether the undisputed facts established that it would have been an undue hardship for St. Jude to allow Plaintiff to work remotely. With regard to this issue, Ms. Kizer primarily argues that she established the existence of a dispute of material fact by relying on the Declaration of Christyna Carter (the "Carter Declaration"). Ms. Carter was Plaintiff's direct supervisor on the Epic project until Ms. Carter's resignation effective September 7, 2021, over a year before the Epic system "went live" in October 2022. Plaintiff contends that St. Jude should have consulted Ms. Carter about the nature of Plaintiff's job duties rather than Colette Hendricks, the Epic Project Director, when determining whether it could accommodate Plaintiff's religious objection to being vaccinated against COVID-19. As is discussed in more detail below, St. Jude submits that the district court correctly concluded that the Carter Declaration did not create a genuine dispute of material fact.

### i.    It is Undisputed That Ms. Kizer's Existing Job Could Not Be Performed Remotely.

In support of summary judgment, St. Jude offered the Declaration of Colette Hendricks, the Vice-President of Clinical Operations at St. Jude and the Project Director for the Epic implementation. Ms. Hendricks declared:

1. Planning and implementation of the new software took two years and was scheduled to and did "go live" in October 2022.

22

2. In her role, it was anticipated that Ms. Kizer would shadow clinicians, nurses, research coordinators, clinical laboratory personnel, pharmacists and others involved in clinical research, often in yellow-zoned clinical areas, to better understand decision-making and workflow for the build of the new system.

3. As the project got closer to "go live," her job would increasingly involve this "at the elbow" support.

4. After "go live," the person in Ms. Kizer's position would still be required to meet regularly in person with clinical research team members to trouble-shoot, refine and add new research protocols to the system.

5. Ultimately, all members of the Epic team were on campus seven days a week for several months during final implementation and "go live," engaging in critical ongoing triage of the Epic system implementation and working with clinical personnel "at the elbow," including in clinical areas, to trouble-shoot and refine the new system.

[Hendricks Decl., RE 31-19, PageID ## 413-416].

Ms. Kizer claims that the Carter Declaration created a genuine issue of material fact that precluded summary judgment as to the issue of whether the essential functions of Kizer's job could be performed remotely. In contrast to the detailed description given by Ms. Hendricks, Ms. Carter, who was Kizer's direct supervisor until September 7, 2021, breezily declared the following conclusory statements:

1. Ms. Carter "totally underst[ood] the way Epic was to be implemented."

2. Ms. Kizer "did not even need to be in the office. Her job could be done completely from home."

3. "She never went to contact end-users or patients at all."

23

4. "Lynn Kizer could have easily been accommodated by working at home and attending meetings remotely without any effort whatsoever on the part of St. Jude."

5. "The way Lynn Kizer's job function worked, she would not have ever worked anywhere near patients."

6. If she had been consulted about whether Kizer could be accommodated, she would have said "yes."

7. Neither she nor Kizer ever did any "at the elbow" shadowing and did not expect to in the future.

8. "When the 'go live' would occur a year after [Ms. Kizer] was fired, St. Jude could not have known she would be at the elbow of clinical people. That was never going to happen."

9. "Even during 'go live,' the entire team did not have to be on site. If somebody needed to go into the hospital, there were plenty of vaccinated people on the team to handle such an assignment."

10. "St. Jude modified nine people's job so they could stay employed and could certainly have modified [Kizer]'s. If I would have been consulted, I could have helped St. Jude do it easily, but they chose not to speak to me."

11. She would have "absolutely recommended" that Kizer be accommodated, and it would have been "simple to do so."

[Carter Decl., RE 32-3, PageID ## 503-505].

In determining that Ms. Carter's Declaration did not create a genuine issue of material fact despite the fact that she said Ms. Kizer could work remotely and Ms. Hendricks said she could not, the district court relied on a number of undisputed facts, none of which had to do with the two witnesses' relative credibility, including the fact that Ms. Hendricks was head of the entire project and so had superior

knowledge of its scope and how Ms. Kizer's duties fit within it, and the fact that Ms. Carter resigned from St. Jude over a year before the project went live.   [Order Granting Summary Judgment, RE 42, PageID # 698-702].   As the district court aptly noted, "[n]othing in Ms. Carter's declaration suggests she was part of any meetings about planning future phases of the Epic System roll out," and that otherwise "nothing in the record suggests she was a more reliable source of information about those future phases than Ms. Hendricks, the Project Director for the Epic System transition for the entire hospital."   [Order Granting Summary Judgment, RE 42, PageID # 700].

But perhaps the most crucial finding the district court made was that Ms. Carter's predictions that neither Ms. Kizer nor any other member of the Epic team would have to go on campus to do their jobs were simply and objectively wrong. [Order Granting Summary Judgment, RE 42, PageID ## 698-701].   Because Ms. Hendricks did not leave St. Jude in September 2021 and was there for all phases of the project through "go live," she was able to state without contradiction that the entire Epic team, including the person in Ms. Kizer's role, were actually at the hospital every day interacting in clinical areas for several months up until "go live," and continue to regularly visit the hospital to this day.   As the district court pointed out, Ms. Kizer offered no facts to dispute Ms. Hendricks' description of what Ms. Kizer's job <u>actually</u> involved.   [Order Granting Summary Judgment, RE 42, PageID

## 700-702]. Ms. Carter could not offer such facts, since she left St. Jude long before

the project even came close to going live and could have no personal knowledge of

what Ms. Kizer's job actually entailed after September 7, 2021. [Hendricks Decl.,

RE 31-19, PageID ## 415-416]. If anything, the district court observed, the Carter

Declaration simply establishes that, had St. Jude asked her, Ms. Carter would have

given a different opinion or conclusion than Ms. Hendricks.[4]  [Order Granting

Summary Judgment, RE 42, PageID # 700].

These findings by the district court were not "credibility determinations," as

claimed by Plaintiff, but rather a determination that Ms. Carter's Declaration

contained nothing more than conclusory allegations, unsubstantiated assertions and

unsupported contentions. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th

Cir. 2006) ("[A]n unsupported contention does not create a question of fact."); *Love

v. St. Jude Children's Research Hosp.*, 2022 WL 985952, at *6 (W.D. Tenn. Mar.

11, 2022) ("Conclusory allegations, speculation, and unsubstantiated assertions are

not evidence and are not sufficient to defeat a well-supported motion for summary

---

[4] Although Plaintiff makes much of the fact that Ms. Carter was Plaintiff's "direct
supervisor" and that St. Jude admitted that, in general, direct supervisors have the
most knowledge of their supervisees' job duties, the record is devoid of any hint that
St. Jude deliberately chose not to consult Ms. Carter in order to avoid
accommodating Ms. Kizer. [Bottenfield Dep., Exhibit A to Defendant's Response
to Plaintiff's Statement of Additional Material Facts in Dispute, RE 33-2, PageID
## 547-548; Deposition of Kathleen Speck ("Speck Dep."), RE 32-2, PageID ##
494-495].

judgment.").[5]  As the United States Supreme Court noted in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), Rule 56 requires that the issue of fact must be "genuine":

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial."* Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

*Id.* at 586.  The district court did not weigh the evidence, as Plaintiff repeatedly claims on appeal, but rather concluded that the Carter Declaration simply did not create a genuine issue to dispute the testimony of Ms. Hendricks that Plaintiff's job duties could not be performed 100% remotely.

Since it is undisputed that Ms. Kizer's essential job functions required her to work in-person and to be present in clinical areas at times, an accommodation that permits her to work entirely from home is an undue hardship to St. Jude as a matter of law.  *See, e.g.*, *Speer v. UCOR*, 2022 WL 3971036, at *7 (E.D. Tenn. Aug. 31, 2022) (finding that there was no evidence that the employer denied a reasonable

---

[5] Plaintiff took little effort to dispute any of St. Jude's Statement of Undisputed Material Facts.  The district court found that many of Plaintiff's responses to St. Jude's SUMF violated Western District of Tennessee Local Rule 56.1, and, thus, the district court considered many of the facts in this action undisputed for purposes of summary judgment [*See* Order Granting Summary Judgment, RE 42, PageID ## 684-685 n.1, 699 n.11, 705 n.16, 712 n.19].

accommodation that would not pose an undue burden when the only available accommodation was remote work but employees could not perform their job duties remotely); *DeVore v. Univ. of Ky. Bd. of Trustees*, 693 F. Supp. 3d 757, 766 (E.D. Ky. 2023) (holding that "[a]ny reasonable jury would find" that allowing the plaintiff to work remotely would impose a substantial burden on defendant when a "fundamental aspect of the job was to be physically present").

### ii.    It is Undisputed That St. Jude Had No Jobs That Could Be Performed 100% Off-Campus.

Although she did not request this accommodation during the accommodation process, in her opposition to summary judgment Ms. Kizer claimed that there is a genuine issue of material fact as to whether St. Jude had existing open positions that could be performed 100% remotely, so that it could not have been an undue hardship to simply transfer her into one of them.[6]  She further claims on appeal that the district court relied on facts not in the record to find that there was no such issue.

In support of its motion for summary judgment, St. Jude offered the Declaration of Dana Bottenfield, the Senior Vice-President of Human Resources for St. Jude, who declared that sixty-two (62) employees sought to be excused from the

---

[6] Plaintiff repeatedly has claimed throughout this litigation that she suggested "several methods of accommodation," but her 2021 request to St. Jude contained only one suggestion—that St. Jude allow her to work from home.  [*Compare* Kizer Dep. Ex. 10, RE No. 31-17 at PageID # 366 and Pl.'s Mem. in Opp. to Summary Judgment, RE 32 at PageID # 461 *with* Pl.'s Request for Accommodation, Ex. 9 to Bottenfield Decl., RE 31-14, PageID ## 343-344].

vaccine mandate for religious reasons.  Of those 62, it was able to accommodate nine (9) of those employees by modifying their <u>current</u> jobs to be permanently performed entirely off-campus.  Not only are these facts in the record, Ms. Kizer deemed them undisputed. [Pl.'s Responses to Def.'s SUMF, RE 32-4, PageID # 521].  Ms. Bottenfield further declared that St. Jude had no jobs that were meant to be performed 100% remotely, so that in order to transfer Ms. Kizer to another position as an accommodation, St. Jude would have to (1) find an open job; (2) for which she was qualified; (3) if it found one, determine if that open job could be modified to be performed entirely off campus; (4) if it could be so modified, transfer her to the job; and (5) hire someone to do the job Kizer vacated.  It would then have to perform the same analysis for the other 53 employees who had requested to be excused from being vaccinated.  The district court properly concluded that the aggregate effect of such an undertaking would have been a substantial burden in the overall context of St. Jude's business.  *See also Together Emps. v. Mass General Brigham, Inc.*, 573 F. Supp. 3d 412, 434, 441 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022) (noting that it is "appropriate to consider aggregate effects when multiple employees are granted the same accommodation").  [*See* Order Granting Summary Judgment, RE 42, PageID # 713-717].

 In opposing summary judgment, Ms. Kizer claimed that this difficult and time-consuming analysis was not necessary for her because, according to the Carter

Declaration, Ms. Carter could have "easily accommodated" Kizer by "placing" her in an "IT job" working on the "Legacy system," which Ms. Carter claimed could have been done "fully remote." [Carter Decl., RE 32-3, PageID # 505]. The district court determined that these assertions did not create a genuine issue of material fact because "Plaintiff fails to show what 'Legacy System' Ms. Carter is referring to, what authority Ms. Carter had to 'place' Plaintiff in another job outside Epic, or how Plaintiff qualified for that position." [Order Granting Summary Judgment, RE 42, PageID # 716]. Ms. Carter's statements were therefore "conclusory allegations, speculation, and unsubstantiated assertions" that cannot create a genuine issue of fact. *See Wright,* 455 F.3d at 709 (6th Cir. 2006) ("[A]n unsupported contention does not create a question of fact."); *Love,* 2022 WL 985952, at *6 ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence and are not sufficient to defeat a well-supported motion for summary judgment.").

In her appeal, Ms. Kizer attempts to escape the speculative and conclusory nature of the Carter Declaration by asking the Court to assume, without evidence, that the "Legacy system" Ms. Carter references in her declaration was the electronic medical record system that was being replaced by Epic; to assume, without any evidence, that Kizer was qualified for this vague "IT job"; and to assume, without any evidence, that Ms. Carter had the authority to place her in the position without the involvement of Human Resources. Rule 56 does not permit unsupported

30

assumptions to be used to create a disputed issue of fact. *See Love*, 2022 WL 985952, at *6.

>    ### iii.    St. Jude Was Not Required, As A Matter of Law, to Assign Another Employee to Perform an Essential Function of Ms. Kizer's Job to Accommodate Her Request for Religious Accommodation.

The Carter Declaration also states that Ms. Kizer could have been accommodated by sending a vaccinated member of the Epic Team to go to the hospital "if something needed to be done there." This statement appears to be based on the assumption that Ms. Kizer would have only an occasional need to go on campus, which, for the reasons discussed above, is simply wrong. It is undisputed that a regular part of Ms. Kizer's job duties—an essential function—involved going on campus. As the district court properly concluded, it is an undue hardship as a matter of law to impose additional burdens on other employees in order to accommodate the plaintiff. [Order Granting Summary Judgment, RE 42, PageID ## 710-711]. *See, e.g., George v. Home Depot Inc.*, 51 F. App'x 482 (5th Cir. 2002); *see also Barrington v. United Airlines*, 566 F. Supp. 3d 1102, 1109 (D. Colo. 2021) (holding that an accommodation that would have caused other employees to have "a heavier workload and/or modify[] their job duties" was an undue hardship); *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001) ("an employer need not exempt an employee from performing essential functions, nor need it reallocate essential functions to other employees" to provide a reasonable accommodation in

the ADA context); *Bruff v. N. Mississippi Health Servs., Inc.*, 244 F.3d 495, 501 (5th Cir. 2001) ("Requiring one or both [of the other] counselors to assume a disproportionate workload, or to travel involuntarily with [plaintiff] to sessions to be available, . . is an undue hardship as a matter of law.").

> **iv.    There is No Evidence in the Record to Establish that Ms. Kizer Had a Year Before She Would Be Required to Work on Campus, and the District Court Correctly Held that Even a Temporary Accommodation Would be an Undue Hardship.**

As a final suggested accommodation, Plaintiff argues that, because the Epic system was not scheduled to "go live" until October 2022, she had a full year in which to stay in her current job working remotely while she sought other jobs or explored other accommodations. Plaintiff appears to be basing this argument on the erroneous assumption that she would not have to go on campus to do her job until the Epic system actually became operational in October 2022; however, as Colette Hendricks' Declaration states, the entire Epic team worked seven days a week at the hospital for "several months" before the system went live. [Hendricks Decl., RE 31-19, PageID ## 415-416]. Plaintiff therefore did not have a "full year" to figure out some unspecified alternative accommodation, and there is no evidence in the record to establish how long she could have continued to work remotely before being required to come on campus. As the district court correctly concluded, Plaintiff's essential job duties required her to be on campus, and it would be an undue hardship

for St. Jude to accommodate her by allowing her to continue to work remotely.
[Order Granting Summary Judgment, RE 42, PageID # 717-719].  *See, e.g.*, *Speer*,
2022 WL 3971036, at *7; *DeVore*, 693 F. Supp. 3d at 766.

### C. Plaintiff Has Abandoned on Appeal the Issue of Whether the District Court Correctly Found that Ms. Kizer's Continued In-Person Presence at St. Jude Constitutes a Direct Safety Risk.

As to whether Plaintiff could otherwise continue her job in-person without
undue burden to St. Jude, Plaintiff does not challenge on appeal the district court's
holding that it would have been an undue hardship for St. Jude to permit her to work
on campus unvaccinated.  Plaintiff has thus abandoned her argument that St. Jude
could have accommodated her by maintaining the COMPASS Protocol.
(Appellant's Br. 46-48).  Specifically, Plaintiff, in her opening brief, stated:

- "[Plaintiff] did not challenge the mandate *nor ask for an accommodation that in any way could be construed as asking to be present among a vulnerable population or her co-workers*" (Appellant's Br. 46-47) (emphasis added)

- "None of these facts [about the safety risks] are material to Ms. Kizer's case, because she did not challenge the policy.  She simply wanted to be accommodated for her religious beliefs not to comply with the mandatory vaccine policy, *and work from home*." (Appellant's Br. 47-49) (emphasis added).

Regardless, as the district court thoughtfully analyzed and concluded, the "context-specific application" of the undue burden hardship standard in *Groff* clearly establishes that accommodating Ms. Kizer in-person would be an undue hardship to St. Jude.  [Order Granting Summary Judgment, RE 42, PageID ## 704-715].  *See, e.g. Draper v. US Pipe & Foundry Co.*, 527 F.2d 515, 521 (6th Cir. 1975) (an employer's legitimate safety concerns are relevant considerations in the undue hardship analysis); *Lake v. HealthAlliance Hosp. Broadway Campus*, __ F. Supp. 3d __, 2024 WL 3226273, at *9 (N.D.N.Y. June 27, 2024) ("Therefore, the only way to prevent plaintiff from encountering patients would have been to assign a vaccinated employee to accompany plaintiff. But even that would have exposed defendant's vaccinated employees to plaintiff and caused operational hardship.") (citing *Groff*, 600 U.S. at 478); *Antredu v. Mass. Dep't of Youth Servs.*, __ F. Supp. 3d __, 2024 WL 1539725, at *5 (D. Mass. Apr. 9, 2024) (undue hardship for youth services department to accommodate unvaccinated employee because close contact with clients and colleagues would have increased the risk of spreading COVID-19 and because clients could have "lost confidence" in Youth Services that its employees worked with children while unvaccinated); *Together Emps.*, 573 F. Supp. 3d at 434, 441 ("[T]o the extent plaintiffs are requesting masking, socially distancing, or periodic testing as reasonable accommodations, [the hospital] is justified in concluding that doing so would present an undue hardship," as continued

in-person presence unvaccinated "would materially increase the risk of spreading the disease").

The district court also correctly considered these issues in totality, concluding that the aggregate costs of continuing St. Jude's COMPASS Protocol to accommodate Plaintiff in-person was an undue burden:

> [a]mong other things, it would have put its vulnerable patients at risk, put other employees at risk, exposed St. Jude to potential legal liability, and threatened its reputation as a safe environment for sick patients. This, together with the financial cost of COMPASS and the burden of diverting valuable resources, employees, and physical space from St. Jude's core mission, constitute an undue hardship.

[Order Granting Summary Judgment, RE 42, PageID # 714].  Consequently, even absent Plaintiff's abandonment of these issues, there is ample legal support for the district court's conclusion that any in-person accommodation of Ms. Kizer would be an undue burden to St. Jude given the nature of its core mission, the operational impacts, and the cost.

### D. Plaintiff Herself Claims the Testimony of Dr. Diego Hijano Has No Relevance to Her Case on Appeal, and Therefore the Issue of His Status as an Expert or Lay Witness is Not in Controversy

Finally, despite having abandoned any challenge to St. Jude's Mandatory COVID-19 Vaccination Policy itself and expressly stating she did not seek continued in-person presence as an accommodation, Plaintiff makes a myriad of objections on appeal to the district court's reliance on Dr. Diego Hijano's testimony in granting summary judgment in favor of St. Jude.  In support of its Motion for

Summary Judgment, St. Jude relied both on testimony by Dr. Hijano as a Federal Rule of Civil Procedure 30(b)(6) corporate representative and on a Declaration executed under oath by Dr. Hijano, based on his personal knowledge and in his capacity as an employee and representative of St. Jude. [*See* Hijano Decl., RE 31-20 at PageID ## 418-420, Hijano Dep., RE 31-21, PageID ## 432-449]. The district court then relied on Dr. Hijano's testimony in support of its analysis that St. Jude considered its patient population to be at increased risk of serious complication and death from the COVID-19 virus and implemented safety protocols accordingly.[7] [Order Granting Motion for Summary Judgment RE 42, PageID ## 685-686, 706-709].

It is difficult to determine the appellate issue Plaintiff is raising with regard to the district court's reliance on the testimony of Dr. Hijano, given her abandonment of the relevant legal issues on appeal. On the one hand, she claims that his testimony should not be allowed because St. Jude did not designate him as an expert. On the other hand, she argues almost simultaneously that his testimony was irrelevant

_____

[7] Plaintiff unabashedly quips that the District Court was merely "impressed" that Dr. Hijano had the title "doctor" in front of his name. (Appellant's Br. 47). While his role appears to have earned him an appropriate modicum of respect from the Court, there is nothing in the district court's opinion that suggests the court relied on his testimony for expert proof rather than lay opinion testimony. Plaintiff has not presented any evidence to materially dispute St. Jude's business decision to implement the COVID-19 vaccination requirement or that in 2021 St. Jude considered unvaccinated employees a safety risk.

because she is not contesting the basis for St. Jude's decision to implement the vaccine mandate. The Court need not wade into the evidentiary issue because Plaintiff concedes that Dr. Hijano's testimony is irrelevant, and, thus, any consideration by the court of the issue of whether he was testifying as an expert or a lay witness is simply a moot controversy.[8]

## II.    PLAINTIFF'S REMAINING BASES FOR OVERTURNING SUMMARY JUDGMENT ARE NOT SUPPORTED BY THE LAW.

Finally, St. Jude addresses a smattering of remaining issues Plaintiff raises in her opening brief.

First, Plaintiff attempts to resurrect her last-ditch-effort, conspiracy-mongering Motion for Sanctions for Bad Faith Conduct, Spoliation, and Discovery Abuse, filed eight months after the complained-of conduct, seven months after the close of discovery, six months after St. Jude's Motion for Summary Judgment was filed, and just before the Court's advised self-imposed deadline to rule on the pending summary judgment motion.[9] [*See* Motion for Sanctions, RE 40, PageID ##

---

[8] In any event, the district court correctly determined that the testimony it relied on from Dr. Hijano reflects lay opinion testimony concerning St. Jude's state of mind about the vulnerability of its patient population and the basis for its internal business decision to implement the vaccine mandate, not expert testimony on the efficacy of the vaccine in preventing the introduction of COVID-19 on campus. [Order Granting Summary Judgment RE 42, PageID ## 686 n.2, 687 n.3].

[9] At a status conference on January 3, 2024, Judge Parker reset the trial in this matter and advised the parties that he expected to rule on the pending Motion for Summary Judgment motion by the end of the month. [Minute Entry, RE 38].

579-581; Def.'s Response to Motion for Sanctions, RE 41, PageID ## 645-683]. St. Jude will not rehash the bad faith nature of this filing or its lack of relevance to the summary judgment motion that is appealed to this Court, as Plaintiff has not cited to a single authority that the district court's failure to rule on this Motion is reversible error.[10]

Second, Plaintiff spends a portion of her brief claiming that summary judgment should be reversed because there is a factual dispute about whether "St. Jude engaged in a good-faith interactive process." (Appellant's Br. 36-42). As the district court correctly observed, Title VII does not require the same interactive process or a "sit down meeting" as does the ADA. *Haskins v. Bio Blood Components*, 2023 WL 2071483, at *3 (W.D. Mich. Feb. 17, 2023); *see also Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (discussing the ADA interactive process). Title VII requires only that employers "make a good faith effort to seek accommodations." *Barrington,* 566 F. Supp. 3d at 1108-09. [Order Granting Summary Judgment, RE 42, PageID ## 720-723].

The only accommodation Plaintiff requested in 2021 was to work remotely, and she maintains to this day that she could have performed her job entirely from

---

[10] To the extent this Court finds this issue to be relevant to its consideration of Plaintiff's appeal, St. Jude relies on its Response in Opposition to Plaintiff's Motion for Sanctions and Defendant's Motion for Sanctions. [Def.'s Response in Opposition to Pl.'s Motion for Sanctions and Exhibits, RE 41, PageID ## 645-683].

home despite undisputed evidence to the contrary. Under these circumstances, any interaction with her other than the orderly, neutral process used by St. Jude would have been futile. *Virts*, 285 F.3d at 520 (Title VII does not require employers to try to accommodate an employee where any attempt to do so would be fruitless); *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610 (9th Cir. 1988) (employer need not engage in a futile act of attempting an accommodation if it can show such accommodation would be an undue hardship); *Together Emps.*, 573 F. Supp. 3d at 437 (quoting *Does 1-6 v. Mills*, 16 F.4th 20, 36 (1st Cir. 2021) (liability for failure to engage in an interactive process depends entirely on whether the employer could have found a reasonable accommodation in the first place). Under these circumstances, the district court's conclusion that St. Jude acted in good faith to seek an accommodation for Plaintiff is unquestionably correct and should be upheld.

## <u>CONCLUSION</u>

This Court should affirm the district court's Order Granting Summary Judgment in favor of St. Jude. Plaintiff is unable to genuinely dispute St. Jude's evidence that Plaintiff's proposed accommodations would create additional substantial burdens on St. Jude's business operations and core mission. She otherwise concedes on appeal that her on-campus presence, including in clinical areas, while unvaccinated, constitutes a safety risk, making any determination of whether Dr. Hijano was an expert or a lay witness unnecessary (although he clearly

testified in the latter capacity). Accommodating Plaintiff would therefore be an undue hardship, and this Court should affirm that St. Jude is entitled to summary judgment as a matter of law.

Date: July 31, 2024

Respectfully submitted,

**BURCH, PORTER & JOHNSON, PLLC**

s/ Lisa A. Krupicka
Lisa A. Krupicka (BPR # 12147)
Sarah E. Stuart (BPR # 35329)
130 North Court Avenue
Memphis, TN  38103
T:  (901) 524-5000
F:  (901) 524-5024
E-mail:  lkrupicka@bpjlaw.com
          sstuart@bpjlaw.com

*Counsel for Appellee St. Jude Children's Research Hospital, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure ("FRAP") 32(a)(7)(B)(i) because it contains 9,842 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the brief exempted by FRAP 32(f) and Sixth Circuit Rule 32(b)(1).

This brief also complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word 2016, Times New Roman in 14-point type, with all footnotes also in Times New Roman 14-point type.

Date:  July 31, 2024

s/ Lisa A. Krupicka
*Counsel for Appellee*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 31, 2024, a true and correct copy of the foregoing document was filed using this Court's electronic filing system, which will automatically send electronic notification of the filing to all counsel of record in this case.

s/ Lisa A. Krupicka
*Counsel for Appellee*

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry | Description of Document | PageID |
|---|---|---|
| RE 1 | Complaint | 1-14 |
| RE 31 | Defendant's Motion for Summary Judgment | 118-119 |
| RE 31-1 | Memorandum in Support of Defendants' Motion for Summary Judgment | 120-139 |
| RE 31-2 | Ex. 1 to Memorandum in Support of Defendants' Motion for Summary Judgment (Selected Portions of Plaintiff's Deposition Transcript) | 140-159 |
| RE 31-3 | Ex. 2 to Memorandum in Support of Defendants' Motion for Summary Judgment (Email from Keith Perry) | 161 |
| RE 31-4 | Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment | 162-172 |

| RE 31-5 | **Ex. A to Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (Declaration of Dana Bottenfield)** | **173-184** |
|---|---|---|
| **RE 31-6** | **Ex. 1 to Declaration of Dana Bottenfield (COMPASS Protocol)** | **186-206** |
| **RE 31-7** | **Ex. 2 to Declaration of Dana Bottenfield (Employee Training for Return to Campus)** | **208-252** |
| **RE 31-8** | **Ex. 3 to Declaration of Dana Bottenfield (Laboratory Maps for Testing)** | **254-255** |
| **RE 31-9** | **Ex. 4 to Declaration of Dana Bottenfield (COVID-19 Response System Map)** | **257** |
| **RE 31-10** | **Ex. 5 to Declaration of Dana Bottenfield (St. Jude Mandatory Vaccination Policy)** | **259-266** |
| **RE 31-11** | **Ex. 6 to Declaration of Dana Bottenfield (Guiding Materials Considered by COMPASS Oversight Committee)** | **268-333** |
| **RE 31-12** | **Ex. 7 to Declaration of Dana Bottenfield (LTD COVID Expense by Fiscal Year)** | **335** |

| RE 31-13 | Ex. 8 to Declaration of Dana Bottenfield (Intranet Religious Accommodation Request Form) | 337-338 |
|---|---|---|
| RE 31-14 | Ex. 9 to Declaration of Dana Bottenfield (Plaintiff's Religious Accommodation Request) | 340-344 |
| RE 31-15 | Ex. 10 to Declaration of Dana Bottenfield (COVID-19 Accommodation Process Notes – Excel Spreadsheet)<br><br>Submitted *in camera* in native format with PII redacted in district court | N/A |
| RE 31-16 | Ex. 11 to Declaration of Dana Bottenfield (Ms. Bottenfield's notes summarizing conversation with Collette Hendricks) | 347-348 |
| RE 31-17 | Ex. B to Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (Selected Portions of Plaintiff's Deposition Transcript) | 350-369 |
| RE 31-18 | Ex. C to Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (Selected Portions of Dana Bottenfield Rule 30(b)(6) Deposition Transcript) | 371-411 |

| RE 31-19 | Ex. D to Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (Declaration of Collette Hendricks) | 412-416 |
|---|---|---|
| RE 31-20 | Ex. E to Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (Declaration of Diego Hijano) | 418-420 |
| RE 31-22 | Ex. F to Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (Selected Portions of Diego Hijano Rule 30(b)(6) Deposition Testimony) | 432-449 |
| RE 32 | Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment | 450-469 |
| RE 32-1 | Ex. A to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Selected Portions of Dana Bottenfield Rule 30(b)(6) Deposition Transcript) | 471-491 |
| RE 32-2 | Ex. B to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Selected Portions of Kathleen Speck Deposition Transcript) | 493-496 |
| RE 32-3 | Plaintiff's Statement of Additional Facts and Declaration of Chrystina Carter | 497-506 |

| RE 32-4 | **Plaintiff's Response to Defendant's Statement of Undisputed Material Facts** | **507-524** |
|---------|---------|---------|
| **RE 33** | **Defendant's Reply in Support of Summary Judgment** | **525-531** |
| **RE 33-1** | **Defendant's Response to Plaintiff's Statement of Additional Material Facts in Dispute** | **532-544** |
| **RE 33-2** | **Exhibit A to Defendant's Response to Plaintiff's Statement of Additional Material Facts in Dispute**<br><br>**(Selected Portions of Dana Bottenfield Rule 30(b)(6) Deposition Transcript)** | **546-550** |
| **RE 33-3** | **Exhibit B to Defendant's Response to Plaintiff's Statement of Additional Material Facts in Dispute**<br><br>**(Selected Portions of Plaintiff's Deposition Transcript)** | **552-557** |
| **RE 34** | **Plaintiff's Sur-Reply in Response to Defendant's Motion for Summary Judgment** | **558-562** |
| **RE 40** | **Plaintiff's Motion for Sanctions for Bad Faith Conduct, Spoliation, and Discovery Abuse** | **570-643** |
| **RE 41** | **Defendant's Response to Plaintiff's Motion for Sanctions for Bad Faith Conduct and Discovery Abuse** | **645-683** |

| RE 42 | Order Granting Summary Judgment | 684-724 |
|:-----:|:-------------------------------:|:-------:|
| RE 43 | Judgment | 725 |