No. 24-5207

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**LYNN KIZER,**
**Plaintiff/Appellant,**

**v.**

**ST. JUDE CHILDREN'S RESEARCH HOSPITAL,**
**Defendant/Appellee.**

On Appeal from the United States District Court
for the Western District of Tennessee, at Memphis
No. 2:22-cv-02620

**REPLY BRIEF OF APPELLANT LYNN KIZER**

Kristin Fecteau Mosher, Esq.
The Law Office of Kristin Fecteau, PLLC
5543 Edmonson Pike, #229
Nashville TN 37211
Tel: (615) 496-5747
kristin@fecteaulaw.com


Ronald Hackenberg
Pacific Justice Institute
9851 Horn Road, Suite 115
Sacramento, CA 95827-6600
Tel: (916) 857-6900
Rhackenberg@PJI.org


*Attorneys for Appellant Lynn Kizer*

## TABLE OF CONTENTS

TABLE OF CONTENTS……………..….…………….………….…….…….. i

TABLE OF AUTHORITIES…………………………………………….ii

**ARGUMENT**……………....……………………………………………..1

**I.    SEVERAL MATERIAL FACTS EXIST THAT MADE
       SUMMARY JUDGMENT IMPROPER…**…………………….……….4

   **A.    Whether St. Jude Engaged in a Good Faith
          Effort to Accommodate…**………………………………………..4

   **B.    Whether St. Jude Considered Possible Options
          to Accommodate.** ………………………………………………5

   **C.    Whether Allowing Ms. Kizer to Work From Home
          Was An "Undue Hardship"** …………………………………...6

**II.   MS. CARTER'S TESTIMONY WAS PROPERLY
       SUBMITTED AND SUPPORTED AND THE JURY
       MUST MAKE ALL CREDIBILITY DECISIONS.** ……………….....7

   **A.    Ms. Carter's Testimony Presents Far More Than
          a "Scintilla" of Evidence In Opposition to the Motion
          for Summary Judgment.** ……………………………………...…10

   **B.    Ms. Carter Was Purposefully Ignored By St. Jude.** ……….…….14

**CONCLUSION**…………………………………………...…………….....18

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION……………………………………………....……...…..19

CERTIFICATE OF SERVICE……………………………….………….20

ADDENDUM……………………………………………………….21

# TABLE OF AUTHORITIES

## **Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ……..……..……..1, 3, 17

*Brener v. Diagnostic Center Hospital*, 671 F.2d 141(5th Cir. 1982)……………13

*Draper v. United States Pipe & Foundry Co*., 527 F.2d 515 (6th Cir.1975)……..12

*EEOC v. Tex. Hydraulics, Inc.,* 583 F. Supp. 2d 904 (E.D. Tenn. 2008)…….…..4

*Groff v. Dejoy*, 600 U.S. 447 (2023)……………….....…………………….…..13

*Harris v. Klare*, 902 F.3d 630 (6th Cir. 2018). …………………………………1

*Hostettler v. College of Wooster*, 895 F.3d 844 (6th Cir. 2018)……………...…9

*McLemore v. Gumacio*, 619 F. Supp. 3d 816 (M.D. Tenn. 2021)…………………2

*Redmond v. GAF Corp*., 574 F.2d 897 (7th Cir. 1978)……………………….…6

*Rodgers v. Banks* , 344 F.3d 587 (6th Cir. 2003)………………………….....10

*Tlapanco v. Elges* , 969 F.3d 638 (6th Cir. 2020)……………………….…..17

*Together Emps. v. Mass. Gen. Brigham Inc.*,
573 F. Supp. 3d 412 (D. Mass. 2021)……………………………………...5

## **Statutes**

29 C.F.R. §§ 1605.2(d)(1)(i), (e)(1)…………………….…………….…..13

Title VII of the Civil Rights Act…………………………………………..3

## **Rules**

Federal Rule of Civil Procedure 56…………………….……...………1, 3, 8, 17

**ARGUMENT**

There are a lot of facts and a lot of distractions presented by St. Jude in this case, but the focus of this appeal is whether there are disputes of material facts that were improperly decided by the trial court. If so, this Court must reverse the judgment of the trial court and remand the case for a jury trial.

It appears that one of the main problems in reconciling the issues in this case is determining just what is a "material fact." Because this case appeals a dismissal under Federal Rule of Civil Procedure 56, which allows a trial court to decide the outcome of a case when no genuine issue of material facts exists to be tried, determining exactly what the parties are contending here is appropriate.

In *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986), the Court stated: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

St. Jude listed 50 "material facts" in its Statement of Undisputed Material Facts but most of them were actually not material facts and were distractions to this case

1

(Def. Stmts. Of Undisputed Material Facts, R. 31-4). St. Jude took issue with Ms. Kizer's response to the non-material facts, when Ms. Kizer responded that they were "not material," and St. Jude echoed the trial court's characterization that Ms. Kizer "violated Local Rule 56.1" by her responses and so "considered the fact to be undisputed for purposes of the motion in failing to respond" (Memorandum Order, Page ID 685; Brief of Appellee, p. 27 at fn. 5). Ms. Kizer did nothing wrong. It may be a fact that the car that hit you and caused you injuries was blue, but it is not material to whether the driver operating the car was negligent. So when Ms. Kizer simply responded that a fact was not material, it is because the fact had no bearing on the outcome of the case. In this case, both St. Jude and the trial court were wrong about what a "material" fact is, as explained in *McLemore v. Gumacio*, 619 F. Supp. 3d 816 (M.D. Tenn. 2021).

In *McLemore*, Plaintiff pointed out that Defendant Gumacio listed excessive "facts" as material, arguing that there cannot possibly be that many "material" facts in a case. The Court said:

> they included many of these statements of material facts merely to provide background information relevant to the case as a whole. But such a suggestion merely highlights that such statements simply should not have been included in the SUMF."

*Id.* at 826. The Court went on to say:

2

a moving party's statement of material facts as to which there exists no genuine issue to be tried (Rule 56.01 statement) should include only material facts, *i.e.*, those facts that "may affect" the outcome of the lawsuit. *See Anderso*n, 477 U.S. at 248, 106 S.Ct. 2505. So if a statement is an assertion of a fact but not a material fact, or an assertion of something that is not a fact at all (but rather, say, an opinion or a legal principle), the statement is not properly included in a Rule 56.01 statement.

*Id.* at 826. That is what occurred here with St. Jude's 50 undisputed "material" facts.[1]

For example, it does not matter that St. Jude is a pediatric research hospital with a specific mission to cure pediatric cancer and other diseases. That has nothing to do with the outcome of this case. The employer here could have been selling tires, building rocket ships, or painting houses. Its mission regarding being a children's hospital is simply background information, but it is not "material."

What is material and relevant here is that the employees make St. Jude's mission possible, and whether this employer followed Title VII of the Civil Rights Act in regard

---

[1] In the Middle District of Tennessee, the judges are adamant that parties study and learn from *McLemore*, and they all require the following language to be included in Initial Case Management Orders: "All attorneys are required to read Judge Richardson's opinion in *McLemore v. Gumucio*, No. 3:19-cv-00530, 2021 WL 2400411 (M.D. Tenn. June 11, 2021), regarding what should (or should not) be included in the summary judgment movant's "statement of undisputed material facts," and any parties moving for summary judgment or responding to a motion for summary judgment are expected to follow Judge Richardson's guidance as detailed in the *McLemore* opinion. Counsel must carefully draft the statement of undisputed material facts to ensure that it is a narrow statement of facts (not opinions, arguments, or legal conclusions) that are material to the outcome of the case and are undisputed as supported by the record."

to those employees. Here specifically, Title VII requires St. Jude to reasonably accommodate Ms. Kizer's religious objection to its COVID-19 mandatory vaccine mandate. This inquiry looks at whether the employer met its burden to show the actions it took, if any, to accommodate the employee's belief. *EEOC v. Tex. Hydraulics, Inc*., 583 F. Supp. 2d 904, 909 (E.D. Tenn. 2008). As the trial court rightly stated "At summary judgment, an employer must demonstrate that it at least considered possible options that would have accommodated an employee and that these options were rejected because they would have caused an undue hardship" (Memorandum Order, Page ID 692). Ms. Kizer contends St. Jude did not consider possible options, and St. Jude contends that it did consider one.

## I.    SEVERAL MATERIAL FACTS EXIST THAT MADE SUMMARY JUDGMENT IMPROPER.

Even if there is one single fact that is in dispute, that renders this case improper for disposition on Summary Judgment and sends the case to trial. Here, there are numerous material facts in dispute. They have been discussed in Ms. Kizer's original brief but some points need to be addressed further since St. Jude filed its Response brief with disingenuous arguments and improper characterization of the facts.

### A.    Whether St. Jude Engaged in a Good Faith Effort to Accommodate.

A factual dispute that St. Jude never addresses in its response is whether it actually engaged in a good faith effort to accommodate Ms. Kizer. In a case St. Jude

cited in its own brief, the law was succinctly laid out: "Liability for failure to engage in an interactive process depends on a finding that the parties could have discovered and implemented a reasonable accommodation through good faith efforts." *Together Emps. v. Mass. Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 442 (D. Mass. 2021). The evidence is undisputed that there was no "bilateral" cooperation to reconcile the needs of St. Jude with Ms. Kizer's religion. St. Jude never spoke with Ms. Kizer in deciding to deny her request for accommodation. So was there a "good faith effort"? St. Jude glossed over this point and went straight into arguing specifics. This makes the question of a "good faith effort" a factual dispute that needs to be decided by a jury.

**B.    Whether St. Jude Considered Possible Options to Accommodate.**

Here, the first material dispute of fact is whether St. Jude considered possible options. The evidence says no. There certainly were not options, plural. St. Jude only considered <u>one</u> option for religious objectors:  they had to be able to work 100% remotely and be "banned" from campus ((Def. Spreadsheet with notations, Ex. 10 to Bottenfield Decl., R. 31-15 submitted in camera)). This one option that was considered was a secret option that religious objectors were never told about (Speck Depo., R. 32-2, PageID# 495-496). However, that was actually the same option Ms. Kizer proposed in her request for accommodation, although Title VII complainants are under no burden to propose to their employers specific means of accommodating their religious

practices. *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978). St. Jude never sought, considered, or offered any options to Ms. Kizer, and in fact, the option to work 100% remotely did not even exist, according to St. Jude's own testimony (Depo. of Bottenfield, R. 32-1, PageID# 476-77). Did St. Jude ever even "consider possible options" when the only one they ever considered does not even exist? Ms. Kizer would answer no. However, the material fact here is, whether St. Jude did consider possible options. Ms. Kizer's witness, Christyna Carter, who was her direct supervisor at St. Jude, submitted a sworn declaration in response to the Motion for Summary Judgment, and testified that working 100% off campus was indeed an option (Decl. of Carter, R. 32-3 at ¶15, PageID# 505). This disputed fact alone should defeat summary judgment and send the case to the jury.

### C.    Whether Allowing Ms. Kizer to Work From Home Was An "Undue Hardship"

Next, although this proposed option was St. Jude's own, St. Jude claims that modifying Ms. Kizer's job so she could work 100% remote was an "undue hardship." Why would St. Jude come up with a "possible option" that was an undue hardship? This was a good option and it is the same option proposed by Ms. Kizer. No one would be exposed to Ms. Kizer as an unvaccinated employee from the safety of her home. No costs would be incurred by St. Jude for providing her a mask, testing her with swabs, or maintaining the COMPASS protocol of "zones" and spacing requirements.

However, Ms. Kizer was never informed that this option was even on the table. St. Jude, unbeknownst to Ms. Kizer, came up with this option. The material fact here is, whether modifying Ms. Kizer's job actually was an undue hardship. Ms. Kizer's witness, Christyna Carter, who was her direct supervisor, says modifying Ms. Kizer's job "would have been simple to do" and that Ms. Kizer could have "easily accommodated by working from home and attending meetings remotely without any effort whatsoever on the part of St. Jude" (Carter Decl., R. 32-3, ¶10, ¶21, PageID# 499). This disputed fact also should defeat summary judgment and send the case to the jury.

## II.    MS. CARTER'S TESTIMONY WAS PROPERLY SUBMITTED AND SUPPORTED AND THE JURY MUST MAKE ALL CREDIBILITY DECISIONS.

Ms. Carter's testimony defeats St. Jude's Motion for Summary Judgment, because her statements create genuine disputes of material facts. The only way around that was for St. Jude to try to improperly discredit her testimony. The trial court accepted these arguments, and St. Jude admits in its brief that the district court "concluded that the Carter Declaration simply did not create a genuine issue to dispute the testimony of Ms. Hendricks that Plaintiff's job duties could not be performed 100% remotely" (Doc. 29, Brief of Appellee, p. 27). The trial court erred in disregarding Ms. Carter's testimony in her Declaration, and this Court should reverse the trial court.

7

"A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or <u>declarations</u> . . ." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added).

Here, Ms. Kizer presented Ms. Carter's testimony in a properly executed declaration. St. Jude did the exact same thing, supporting its Motion with two declarations, including one from Ms. Hendricks. Therefore, presenting conflicting testimony in the same format (Declarations) cannot be the problem here. The trial court erroneously accepted the testimony in her Declaration over Ms. Carter's Declaration. What is incredible here is that Ms. Carter is not some random third party who was not involved in Ms. Kizer's employment giving random statements about what could or could not have occurred to accommodate Ms. Kizer in this case. Ms. Carter is an agent of St. Jude. She was an employee of St. Jude and Ms. Kizer's direct supervisor. She has actual knowledge of Ms. Kizer's day-to-day job duties, her training, and the operations of St. Jude. She is a manager with the power to hire (Pl. Stmt. of Add'l. Facts in Dispute, R. 32-3, #31-33, PageID# 500-501). She knows what jobs were available and specifically ones that Ms. Kizer was qualified to fill (Id.) The fact that

8

St. Jude is trying to distance itself from Ms. Carter's testimony and discredit her all in an effort to justify denying Ms. Kizer's request for accommodation is a little shocking.

However, what it all boils down to is whose testimony to believe. That was not something the lower court should have gotten into, and it erred when it did. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). Incredibly, St. Jude claims the district court did not judge credibility, but in the same sentence notes that the district court found that "Ms. Hendricks was head of the entire project <u>and so had superior knowledge</u> of its scope and how Ms. Kizer's duties fit within it, and the fact that Ms. Carter resigned from St. Jude over a year before the project went live" (Doc. 29, Brief of Appellee, p. 24-25). Finding that Ms. Hendricks had "superior knowledge" is a direct finding of credibility. The Court found, and St. Jude argues, that Ms. Carter basically was not qualified to give an opinion about Ms. Kizer's job duties "since she left St. Jude long before the project even came close to going live and could have no personal knowledge of what Ms. Kizer's job actually entailed after September 7, 2021" (Id. at p. 26). Again, this goes to credibility. Another statement by St. Jude in its own brief demonstrates another instance where the district court made a credibility finding regarding Ms. Carter, citing the trial court's holding that "nothing in the record suggests she was a more reliable source of information about those future phases than

9

Ms. Hendricks . . . ." (Doc. 29, Brief of Appellee, p. 25). Saying that she was not a "more reliable source of information" is yet another credibility finding. Engaging in these judgments of who is more credible or reliable was erroneous.

However, the point is, Ms. Carter had the same knowledge as Ms. Hendricks at the time the decision was made to deny Ms. Kizer's request for accommodation, which was way before "go live," and that is what is on trial here, not what actually ended up happening with the Epic system nearly a year later.

As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks* , 344 F.3d 587, 595 (6th Cir. 2003).

### A.   Ms. Carter's Testimony Presents Far More Than a "Scintilla" of Evidence In Opposition to the Motion for Summary Judgment.

Here, Ms. Carter testimony is far more than a "scintilla" of evidence. She is the direct supervisor of Ms. Kizer, and her Declaration does what St. Jude should have done, which is to present possible options of how Ms. Kizer could have been accommodated so that not only were her religious beliefs protected, but so was her job.

10

There is a question of fact of whether Ms. Kizer would have been required to even be "at the elbow" and go to campus during "go live." Neither Ms. Carter nor Ms. Kizer ever did any "at the elbow" shadowing while they trained to learn and build the new Epic system, and Ms. Carter did not expect to in the future when the system went live at the hospital, so Ms. Kizer would not need to then, either (Carter Decl., R. 32-3 at ¶¶13-14, PageID# 505-06). Both St. Jude and the trial court make much of the fact that indeed, when "go live" occurred, all members of the Epic team were on campus seven days a week for several months" (Doc. 29, Brief of Appellee, p. 23). However, this lawsuit was pending when "go live" occurred and knowing that whether Ms. Kizer could have worked 100% from home was a question of fact that would have defeated their lawsuit, it is easy to see that St. Jude may have made sure that the Epic team came to campus in order to win this lawsuit. The evidence also shows, as stated above, that having employees work from home was "not how we want to operate."  St. Jude did not want to have employees working from home, but there is no testimony that they could not have employees working from home.

Ms. Carter states that Ms. Kizer does not ever have to go to campus and can meet remotely if necessary (Carter Decl., R. 32-3, ¶9, ¶10, ¶15, PageID# 504-505). Since the pandemic, conducting meetings remotely and using Zoom or Facetime has become accepted and the norm for nearly every business. It is a material fact whether

this accommodation would have been an option. St. Jude could have done it, but as the Vaccine Committee recorded in its notes regarding Ms. Kizer's request for accommodation, she can "occasionally can work at home but not how we want to operate" (Native format spreadsheet, R. 31-15 submitted in camera – see narrative at "Job Info" block for Lynn Kizer). "[A]n employer does not sustain his burden of proof merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

Ms. Carter testified it "would be simple" to accommodate Ms. Kizer and "easily" done by allowing her to attend meetings remotely "without any effort whatsoever on the part of St. Jude" (Carter Decl., R. 32-3, ¶10, ¶21, PageID# 499). St. Jude merely said it was too costly or burdensome and did not demonstrate facts showing that it is. The trial court took that on face value and improperly disregarded Ms. Carter's testimony that it was easily done and simple. Therefore, this is a question of fact.

Ms. Carter also presented the possible option of sending someone vaccinated to go in Ms. Kizer's place for the times she might have to come onto campus (Id., R. 32-3, ¶12, PageID# 504). This is similar to shift-swapping when employees object to working on their Sabbath, and courts have held is a reasonable option. "[O]ne means

of accommodating an employee who is unable to work on a particular day due to religious convictions is to allow the employee to trade work shifts with another qualified employee. When an employer allows such a trade, it has reasonably accommodated its employee. *See, e.g., Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 146 (5th Cir. 1982). Some hardships, such as the labor costs of coordinating voluntary shift swaps, are not "undue" because they are too insubstantial. See 29 C.F.R. §§ 1605.2(d)(1)(i), (e)(1). In *Groff v. Dejoy*, 143 S.Ct. 2279 (2023), the Court advised that, "in all likelihood," no undue hardship is imposed by temporary payment of premium wages for a substitute, voluntary shift swapping, occasional shift swapping, or administrative costs involved in reworking schedules. *Id.* at 2293, 2296.

Finally, Ms. Carter presented the possible option of moving Ms. Kizer to a new position, one where Ms. Kizer would be working on the "legacy" data system and not the new Epic data system. Through the Declaration of Dana Bottenfield, St. Jude claimed that in order to transfer Ms. Kizer to another position as an accommodation, St. Jude would have to "1) find an open job; 2) for which she was qualified; 3) if it found one, determine if that open job could be modified to be performed entirely off campus; 4) if it could be modified, transfer her to the job; and 5) hire someone to do the job Kizer vacated." (Doc. 29, Brief of Appellee, p. 29). Ms. Carter's Declaration states there was an open job, and she had actual knowledge of it, because she was the

13

one hiring and trying to fill the position, and that she would have hired Ms. Kizer (Id. at ¶15, PageID# 505). It is laughable that St. Jude mentions having to hire someone to fill the job Ms. Kizer vacated by letting her go to another job as a burden, when St. Jude had to hire someone to fill the job Ms. Kizer vacated when they fired her for not taking the vaccine. That is not even a factor to be considered here under the facts of what happened.

Therefore, Ms. Carter's Declaration creates more than a scintilla of countervailing evidence that there were other possible options that St. Jude could have considered and offered to Ms. Kizer, but it did not even consider them or try them.

### B.    Ms. Carter Was Purposefully Ignored By St. Jude.

This all boils down to St. Jude not ever consulting Ms. Carter. That in itself should be a fact considered by the jury when determining whether St. Jude acted in good faith. St. Jude claims that "the record is devoid of any hint that St. Jude deliberately chose not to consult Ms. Carter in order to avoid accommodating Ms. Kizer" (Doc. 29, Brief of Appellee, p. 26 at fn. 4). It appears that St. Jude skipped over Ms. Kizer's brief pages 36-37. There is a pending Motion for Sanctions concerning St. Jude's conduct in failing to ever identify Ms. Carter during discovery (Motion for Sanctions for Bad Faith Conduct, Spoliation, and Discovery Abuse, R. 40-1, PageID# 579-581). In her Declaration, Dana Bottenfield claimed she spoke to Ms. Hendricks

14

instead of Ms. Carter, who was Ms. Kizer's direct supervisor, because Ms. Carter "had recently left St. Jude" (Decl. of. Bottenfield, R. 31-5, PageID#182-183). This was a false statement. Ms. Carter did not leave St. Jude until September 7, which was weeks after Ms. Bottenfield interviewed Ms. Hendricks (Def. Resp. to Pl Add'l Facts, R. 33-1, PageID# 537). Ms. Hendricks also made a false or deliberately misleading statement under oath, stating in her declaration "Crystina [sic] Carter, who resigned from St. Jude in early August 2021" and then said "In either July or August 2021, I spoke with Dana Bottenfield . . . regarding Ms. Kizer's request for an accommodation exempting her from the COVID-19 vaccination mandate . . . " (Decl. of Hendricks, R. 31-19, PageID# 415, at ¶¶ 8-9). However, after Ms. Kizer located Ms. Carter and submitted her Declaration to the Court about her dates of employment in response to Hendrick's and Bottenfield's claims, now St. Jude does not dispute that Ms. Carter was still an employee with St. Jude through September 7, 2021, and was still employed with St. Jude during the time frame that the Vaccine Committee made the decision to refuse to accommodate Ms. Kizer's religious exemption request (Def. Resp. to Pl Add'l Facts, R. 33-1, PageID#537). Ms. Bottenfield is the Senior Vice President of Human Resources at St. Jude and is either grossly incompetent in her job since she does not even know whether someone still works at St. Jude, or is deliberately concealing the truth regarding not wanting to speak to Ms. Carter. Ms. Hendrick's statement was also

15

misleading at best, saying Ms. Carter had "resigned," yet knowing Ms. Carter was still working out her several-weeks notice. Under Summary Judgment standards, all inferences are to be construed in favor of the non-movant. The inference is that St. Jude chose not to talk to Ms. Carter because it did not want to hear her opinions on possible options to accommodate Ms. Kizer. The goal of St. Jude was to get everyone vaccinated, not have a percentage of its employees unvaccinated for medical or religious reasons. They did even not want people working from home because "that's not how we want to operate." Therefore, the record contains at least a "hint," if not more, of St. Jude deliberately choosing not to speak to Ms. Carter.

St. Jude identified Ms. Hendricks only vaguely in discovery, and then she became the star witness with a 14-paragraph Declaration about facts in this case after discovery had closed. Ms. Kizer was lucky to then locate Ms. Carter, who had left the company, and find out what her testimony was, which turned out to be the polar opposite of what St. Jude was claiming. (Id.)

St. Jude refused to interview her, then kept her whereabouts in the dark once Ms. Kizer began the process of inquiring why she could not be accommodated, which began with simple letters questioning the denial of her request, to an EEOC claim, all the way up to this litigation.

St. Jude used a process with no transparency, so it could accommodate whomever they wished and terminate whomever they wished. The truth of the matter is, Ms. Carter blows giant holes in St. Jude's lame excuses for failing to ever interact with Ms. Kizer, or failing to consider possible options to accommodate her. St. Jude knew if she ever came to light, this case was headed to a jury. In the movie "The Wizard of Oz," Dorothy and her friends get a peek behind the scenes and discover that the Great and Mighty Oz is just a man with smoke and lighting. As Toto pulls back the curtain, Oz realizes they see him, and he says "Pay no attention to that man behind the curtain!"  That is precisely what St. Jude is asking the Court to do. Otherwise, their cover is blown. There were opportunities to accommodate Ms. Kizer that St. Jude was not willing to disclose. At the very least, this is a disputed fact.

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. It actually appears that the opposite occurred here. Everything was done to discredit and disregard Ms. Kizer's properly submitted disputed material facts and evidence. That was not proper pursuant to the standards required under Federal Rule 56.

17

## CONCLUSION

Because there are material facts in dispute that must be resolved by a jury, the judgment of the trial court should be reversed, and the case remanded to the trial court for a trial.

Respectfully submitted,

/s/ Kristin Mosher
Kristin Mosher (BPR #19772)
The Law Office of Kristin Fecteau, PLLC
5543 Edmonson Pike, Suite 229
Nashville, Tennessee 37211
(615) 496-5747
kristin@fecteaulaw.com


/s/ Ron Hackenberg
Ron Hackenberg, Esq.
Pacific Justice Institute
(228) 471-0077
rhackenberg@pji.org


*Counsel for Plaintiff Lynn Kizer*

18

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the length limitation of FRAP 32 and 6 Cir. R. 32 because it does not exceed 5000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the requirements of Fed. R. App. P. 32(a) and Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface using "MS Word 2023" with Times New Roman, size 14 font.

/s/ Kristin Mosher, Esq.
Kristin Mosher (BPR #19772)
The Law Office of Kristin Fecteau, PLLC
5543 Edmonson Pike, Suite 229
Nashville, Tennessee 37211
(615) 496-5747
kristin@fecteaulaw.com

Counsel for Appellant, August 21, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 21, 2024, this brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Kristin Mosher</u>

Kristin Mosher (BPR #19772)
The Law Office of Kristin Fecteau, PLLC
5543 Edmonson Pike, Suite 229
Nashville, Tennessee 37211
(615) 496-5747
kristin@fecteaulaw.com

Counsel for Appellant

# ADDENDUM

## Designation of Relevant District Court Documents

**Pursuant to 6th Circuit Rules 28(a) and 30(g), this addendum includes the relevant documents from the district court record:**

| Document | Record Entry # | Page ID# |
|---|---|---|
| Native Format Spreadsheet | RE 31-15 | (*in camera*) |
| Bottenfield Deposition | RE 32-1 | 471-491 |
| Bottenfield Declaration | RE 31-5 | 173-184 |
| Hendricks Declaration | RE 31-19 | 412-416 |
| Plaintiff's Response to Summary Judgment | RE 32 | 450-469 |
| Speck Deposition | RE 32-2 | 493-496 |
| Pl. Stmt. of Add'l Facts in Dispute and (Carter Declaration) | RE 32-3 | 497-506 503-506 |
| Defendant's Response to Plaintiff's Stmt. of Add'l Undisputed Facts | RE 33-1 | 532-544 |
| Memorandum in Support of Motion For Sanctions for Bad Faith Conduct And Discovery Abuse | RE 40-1 | 572-591 |